**UNITED MUNICIPAL DISTRIBUTORS GROUP, Petitioner,**

**v.**

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent,**

**United Gas Pipe Line Company, Intervenor.**

**No. 83–1451.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 25, 1984.

Decided April 13, 1984.

---

James R. Choukas-Bradley, Washington, D.C., with whom William T. Miller, Washington, D.C., was on brief, for petitioner.

Robert F. Shapiro, Atty., Federal Energy Regulatory Commission, Washington, D.C., with whom Stephen R. Melton, Acting Gen-

eral Counsel, and Jerome M. Feit, Sol., Federal Energy Regulatory Commission, Washington, D.C., were on brief, for respondent.

Irving Jacob Golub, Houston, Tex., with whom Phillip D. Endom, Houston, Tex., was on brief for intervenor. Cecil W. Talley, Houston, Tex., also entered an appearance for intervenor.

Before SCALIA and STARR, Circuit Judges, and GESELL,* United States District Judge for the District of Columbia.

Opinion for the Court filed by Circuit Judge STARR.

STARR, Circuit Judge:

In this case, petitioner United Municipal Distributors Group ("UMDG"), a group of municipal distributors of natural gas in Alabama and Florida, petitions for review under 15 U.S.C. § 717r(b) (1982) of two orders of the Federal Energy Regulatory Commission ("FERC" or "Commission") approving a settlement of rate increases filed by intervenor United Gas Pipe Line Company ("United"). FERC approved the settlement as to all parties except UMDG, which had objected to the settlement on the ground that the settlement should have been conditioned on the severance and reservation of an issue relating to FERC's treatment of United's corporate income tax. In the face of UMDG's objection to the settlement, FERC remanded the case as to UMDG only for a full administrative hearing on the question of United's rates. UMDG challenges this action on several grounds, namely that FERC's disposition of this case contravenes judicial precedent and FERC regulations regarding settlement procedures; represents a departure

from prior FERC precedent with respect to settlements; and works a violation of the antidiscrimination provisions of the Natural Gas Act ("NGA"), 15 U.S.C. §§ 717–717z (1982). We disagree and uphold the Commission's orders.

I.

On June 30, 1981, United, a large gas pipeline company, filed an application for an increase in its rates pursuant to section 4 of the NGA, 15 U.S.C. § 717c. FERC accepted the rates for filing and suspended their effectiveness for the maximum period of five months, until January 1, 1982, after which they became effective subject to refund. Order Accepting for Filing and Suspending Tariff Sheets, Subject to Conditions and Establishing Procedures, *United Gas Pipe Line Company*, 16 FERC (CCH) ¶ 61,093 (June 30, 1981). The Commission permitted some twenty parties, including United's direct and indirect customers and several state utility commissions, to intervene. Following settlement negotiations among United, the various intervenors, and the Commission staff, United filed a settlement agreement with the Commission on October 1, 1982. The Commission staff submitted comments in support of the settlement. Only UMDG filed comments in opposition. Certification of Settlement Proposal, *United Gas Pipe Line Company*, 21 FERC (CCH) ¶ 63,041 (November 12, 1982). UMDG argued that the settlement should be conditioned upon the inclusion of a reservation clause, which would permit resolution of an issue known as the "consolidated tax" or "stand-alone" issue following the completion of judicial review of another FERC proceeding involving this specific issue.[1]

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

1. The consolidated tax issue concerns how regulated entities, such as United, compute their tax allowances for purposes of ratemaking under 15 U.S.C. § 717c. United and its corporate affiliates elected to file consolidated tax returns under 26 U.S.C. §§ 1501–05 (1982) rather than separate returns. One of the results of filing a consolidated return is that the "losses of an

affiliate [corporation] can be set off against the taxable income of other affiliates in the group." *City of Charlottesville v. FERC,* 661 F.2d 945, 946 n. 6 (D.C.Cir.1981). The Commission in the orders reviewed by this court in the *City of Charlottesville* decision approved the computation of the tax allowance for purposes of ratemaking on a "stand-alone" basis—as if the company actually paid taxes on a stand-alone basis, independent of its affiliates. *Id.* at 946. Thus, the tax-reducing effect that results when the

The presiding administrative law judge (ALJ) certified the settlement proposal to the Commission. 21 FERC (CCH) ¶ 63,041 (Nov. 12, 1982). In doing so, the ALJ concluded

> that there are no material facts in dispute, that there is substantial evidence in the record upon which the Commission may base a reasoned decision on the merits of all contested issues, [and] that a formal evidentiary hearing would serve no useful public purpose....

*Id.* The Commission, by order issued February 3, 1983, approved the settlement "in its entirety as to all of United's customers except UMDG." Order Approving Settlement, *United Gas Pipe Line Company*, 22 FERC (CCH) ¶ 61,094, at 61,145 (Feb. 3, 1983). FERC found that, by attempting to reserve the consolidated tax issue, UMDG had rejected the "entire settlement package." *Id.* The Commission therefore remanded for a full hearing under section 4 of the NGA on the rates to be charged UMDG by United. *Id.* The Commission denied UMDG's petition for rehearing, stating:

> When a party contests a proposed settlement the Commission may act on the settlement as an on the merits resolution of the issues raised based upon substantial evidence. That is not what the Commission did in this instance. We approved the uncontested settlement between United and the majority of its customers and remanded the question of rates for the one contesting party ([U]MDG) for a hearing. We did not

attempt to decide the issue of just and reasonable rates for [U]MDG, but, rather, provided it the full due process opportunity to present its case to the Commission....

> We believe our order reflects a prudent policy. That policy is one of preserving a settlement for the vast majority of the contented parties, allowing them to have the benefit of their bargain. The one contesting party will have the full due process right of a hearing. We thus encourage the settlement process while affording any party dissatisfied with a proposed settlement an opportunity to process his case....

Order Denying Rehearing, *United Gas Pipe Line Company*, 23 FERC (CCH) ¶ 61,101, at 61,246 (April 19, 1983). This appeal followed. This court granted a stay of that portion of the FERC order remanding UMDG's part of the case to the ALJ for a rate hearing, stating that "the granting of this stay, while it maintains the status quo, is not a vindication of petitioner's claims; we express no view on the merits of this case." *United Municipal Distributors Group v. FERC*, No. 83–1451 (June 22, 1983).

## II.

### A. *Reviewability of FERC's Orders.*

 Before addressing the merits of UMDG's claims, we must first determine whether the orders at issue are ripe for judicial review.[2] United argues that

---

company files a consolidated return with its corporate affiliates is not reflected in the computation of the tax allowance for the ratemaking.

In *City of Charlottesville*, this court held that, although the Commission has statutory authority to follow the stand-alone policy, the rate orders at issue in that case were not supported by substantial evidence. *Id.* at 954. This court therefore remanded the case to FERC. FERC has, subsequent to the orders in this case, reaffirmed its stand-alone policy. *Columbia Gulf Transmission Co.*, 23 FERC (CCH) ¶ 61,396 (June 22, 1983); Notice Denying Rehearing, 24 FERC (CCH) ¶ 61,258 (Aug. 22, 1983); *petitions for review filed sub nom. City of Charlottesville*

*v. FERC*, Nos. 83–2059, 83–2086 (D.C.Cir. Oct. 6, 1983).

2. There is no contention in this case that this court lacks jurisdiction to review these two orders because the requirements of 15 U.S.C. § 717r(a) were not met. An application for rehearing is a jurisdictional prerequisite to judicial review of Commission orders under the NGA. 15 U.S.C. § 717r(a) (1982); *see Public Service Comm'n of New York v. FPC*, 543 F.2d 757, 774 n. 116 (D.C.Cir.1974) (modification of prior administrative decision on rehearing does not generate a need to request another rehearing). Petitioner in this case has clearly satisfied the requirements of § 717r(a). *See* Order Approving Settlement, *United Gas Pipe Line Co.*, 22 FERC (CCH) ¶ 61,094 (Feb. 3, 1983); Order De-

FERC's decision to remand the case for a rate hearing is not ripe for review under *Papago Tribal Utility Authority v. FERC,* 628 F.2d 235 (D.C.Cir.), *cert. denied,* 449 U.S. 1061, 101 S.Ct. 784, 66 L.Ed.2d 604 (1980), and other decisions of this court. We reject this argument and conclude that these orders are final and reviewable.

United's argument fundamentally misperceives both the nature of UMDG's challenge and this court's decision in *Papago* and its progeny. First, petitioner is seeking review of the Commission's orders approving the settlement as to all parties except UMDG and remanding the case to the ALJ for a full hearing on rates. UMDG argues that this action is outside FERC's powers under applicable statutes and regulations to approve settlements. UMDG's argument is, in effect, that it should not be forced to bear the burden of a full-blown rate proceeding. Thus, United's suggestion that UMDG's interests remain unaffected until FERC decides UMDG's rates upon conclusion of the rate proceeding utterly mischaracterizes UMDG's complaint.

Second, and more fundamentally, United's characterization of this order as a non-final, unreviewable order is inconsistent with this court's teachings in *Papago* and subsequent decisions. In *Papago,* this court held that FERC orders accepting rate filings and suspending the proposed new rates were not final, reviewable orders, inasmuch as no hearing on the lawfulness of the rates had been held.[3] 628 F.2d at 243. In doing so, the court examined three factors: (1) whether the order is final when viewed in relation to its place in the administrative process; (2) whether the party seeking review will suffer irreparable harm in the absence of review; and (3) whether judicial review would "invade the province reserved to the discretion of the agency."[4] *Id.* at 239–43.

The application of the *Papago* analysis to the Commission's orders in this case demonstrates that they are in fact final and reviewable. First, the orders grant final approval to a rate settlement under section 4 of the NGA. The orders are thus analogous to a "final determination of the justness and reasonableness of the rate filing," which the *Papago* court characterized as "[t]he quintessential reviewable order." 628 F.2d at 239. This settlement brings the ratemaking proceeding to a close for all parties except UMDG, and therefore does

nying Rehearing, *United Gas Pipe Line Co.,* 23 FERC (CCH) ¶ 61,101 (April 19, 1983).

**3.** Although the Court in *Papago* was construing § 313(b) of the Federal Power Act ("FPA"), 16 U.S.C. § 825*l* (1982), that provision contains language identical in relevant part to that in § 19(b) of the NGA, 15 U.S.C. § 717r(b) (1982), which provides in part:

> [a]ny party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in the court of appeals of the United States....

The *Papago* analysis is thus applicable in determining whether UMDG is "aggrieved" by the orders sought to be reviewed in this case.

**4.** The *Papago* analysis represents an articulation of the doctrine of ripeness of agency orders for judicial review. *See Abbott Laboratories v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515–16, 18 L.Ed.2d 681 (1967) (the doctrine of ripeness exists to prevent courts from becoming entangled with abstract intra-agency disagreements over administrative policies and to protect the agencies from judicial interference until

an agency decision has been finalized and its effects are felt in a concrete way). The ripeness doctrine demands an analysis informed by pragmatic concerns. Thus, this court in *Delmarva Power & Light Co. v. FERC,* 671 F.2d 587 (D.C. Cir.1982), observed that the analysis of finality of an agency decision involves ascertaining the "practical function and consequences of judicial intervention." *Id.* at 592. The *Papago* factors clearly reflect these pragmatic concerns. *See also Cities of Carlisle v. FERC,* 704 F.2d 1259, 1262–63 (D.C.Cir.1983) (applying *Papago's* analysis and concluding that a FERC decision to accept rate filing and not to suspend those rates was not a reviewable, final order); *Cities of Anaheim v. FERC,* 692 F.2d 773, 780 (D.C.Cir. 1982) (FERC's acceptance of a license application was not a final, reviewable order under the *Papago* analysis); *Delmarva Power & Light Co. v. FERC,* 671 F.2d 587, 593–94 (D.C.Cir.1982) (FERC's acceptance of a rate filing and suspension of rates for five months was not reviewable under *Papago* ); *North Carolina Utility Comm'n v. FERC,* 653 F.2d 655, 668 (D.C.Cir.1981) (FERC's refusal to institute an investigation concerning curtailments was not a final and reviewable order under *Papago* ).

not resemble the acceptance of rate filings or refusals to initiate proceedings found unreviewable in *Papago* and its progeny. Second, requiring UMDG to do precisely what it strenuously argues FERC is not authorized to do and to seek judicial review afterward would preclude the relief UMDG seeks.[5] Finally, judicial review at this stage would not invade the Commission's province by dictating how FERC should proceed with the remanded ratemaking. Rather, judicial review of the orders here is limited to determining the propriety of the Commission's actions in approving the rate settlement as to all parties except UMDG. We therefore conclude that the two FERC orders at issue here are final and reviewable.[6]

**B. *The Validity of The Commission's Approval of the Settlement.***

**1. *Statutes, Regulations, and Judicial Precedent Governing Settlements.***

■ UMDG vigorously argues that the statutes, regulations, and judicial decisions governing settlements of rate cases under section 4 of the NGA do not authorize the procedure used by FERC in this instance.[7] UMDG also argues that the Commission's action contravenes regulations and judicial precedent governing FERC's settlement

authority. We find neither argument persuasive.

The Commission rule governing contested settlements provides:

(h) *Contested Offers of Settlement*

($l$)(i) If the Commission determines that any offer of settlement is contested in whole or in part, by any party, the Commission may decide the merits of the contested settlement issues, if the record contains substantial evidence upon which to base a reasoned decision or the Commission determines there is no genuine issue of material fact.

(ii) If the Commission finds that the record lacks substantial evidence or that the issue cannot be severed from the offer of settlement the Commission will:

(A) Establish procedures for the purpose of receiving additional evidence before a presiding officer upon which a decision on the contested issues may be reasonably based; or

(B) *Take other action which the Commission deems appropriate.*

(iii) If contested issues are severable, the uncontested portions may be severed and decided in accordance with paragraph (g) of this section.[8]

Rule 602(h), 18 C.F.R. § 385.602(h) (1982) (emphasis added).

---

5. We also note, as previously indicated, the fact that a motions panel of this court entered a stay of that aspect of that Commission's orders remanding for a full rate hearing. *United Municipal Dist. Group v. FERC,* No. 83-1451 (June 22, 1983).

6. Tellingly, only United contends that the orders are not ripe for review. FERC has not so argued.

7. The Commission's authority to settle informally ratemaking proceedings stems from its statutory authority to conduct ratemaking proceedings under section 4(e) of the NGA, 15 U.S.C. § 717c(e) (1982) and from section 554(c)(1) of the Administrative Procedure Act ("APA"), which provides for "the submission and consideration of facts, arguments, [and] offers of settlement ... when ... the public interest permits." 5 U.S.C. § 554(c) (1982). *See Mobil Oil Corp. v. FPC,* 417 U.S. 283, 313–14, 94 S.Ct. 2328, 2348–49, 41 L.Ed.2d 72 (1974) (recognizing FPC's authority ratemaking proceedings); *Pennsylvania Gas & Water Co. v. FPC,* 463 F.2d 1242,

1247–50 (D.C.Cir.1972) (discussing APA § 554(c) and FPC statutory and regulatory authority to approve settlements).

8. Paragraph (g) governs uncontested offers of settlement and provides that the presiding administrative law judge may certify uncontested offers of settlement to the Commission and that "[a]n uncontested offer of settlement may be approved by the Commission upon a finding that the settlement appears to be fair and reasonable and in the public interest." Rule 602(g), 18 C.F.R. § 385.602(g) (1982). The Commission's regulations thus permit it to approve uncontested offers of settlement without a determination on the merits that the rates approved are "just and reasonable." The Commission's approval of an uncontested settlement has no precedential value as settled practice. *See, e.g.,* Order Approving Settlement, *United Gas Pipe Line Co.,* 22 FERC (CCH) ¶ 61,094 (Feb. 3, 1983).

■ Under the Commission's regulations, an *uncontested* offer of settlement may be approved if the Commission finds that the settlement is fair and reasonable and in the public interest. *See* note 8, *supra.* A *contested* offer of settlement may be approved as a decision on the merits under Rule 602(h) if supported by substantial evidence as required by section 4 of the NGA, 15 U.S.C. § 717c(e). Rule 602(h) also allows the Commission to approve a contested settlement if no genuine issues of material fact exist as to the contested issues. This procedure permits the resolution of issues without lengthy and costly hearings on every issue and "is in effect a 'summary judgment' granted on 'motion' by the litigants when there is no issue of fact." *Pennsylvania Gas & Water Co. v. FPC,* 463 F.2d 1242, 1246 (D.C. Cir.1972); *see also Mobil Oil Corp. v. FPC,* 417 U.S. 283, 313–14, 94 S.Ct. 2328, 2348–49, 41 L.Ed.2d 72 (1974). Finally, the regulations permit the Commission to sever uncontested portions of a settlement and to approve those portions while setting the contested portions of the case for a hearing. Rule 602(h)(1)(iii), 18 C.F.R. § 385.-602(h)(1)(iii) (1982).

In deciding to approve the settlement as to all parties except UMDG, the Commission decided not to sever the consolidated tax issue under Rule 602(h)(1)(iii), for the simple reason that it considered the tax aspect of the settlement to be part of an "inseparable package." [9] Instead, the Commission approved the settlement as to all other parties as if it were an uncontested settlement under Rule 602(g). *See* note 8, *supra,* for the text of the Rule 602(g). Order Denying Rehearing, *United Gas Pipe Line Company,* 23 FERC § 61,101, at 61,246 (April 19, 1983).[10]

■ The governing regulations plainly do not forbid the Commission's action in this case. To the contrary, the regulations confer upon the Commission broad authority to "[t]ake other action which the Commission deems appropriate" when the Commission determines that "the issue cannot be severed from the offer of settlement."

In addition to the plain language of the rule, FERC's interpretation is clearly entitled to deference under well established principles of law. *See Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965) (an agency's construction of its own regulation is entitled to even more deference than an agency's construction of its own statute); *Belco Petroleum Corp. v. FERC,* 589 F.2d 680, 685–86 (D.C.Cir.1978) (courts will uphold an agency's construction of its own regulation if it is reasonable and consistent with the regulation). We therefore reject UMDG's contention that, under the regulations governing contested settlements, FERC's choices are limited to the three alternatives of approving the settlement as a binding, on-the-merits resolution of issues raised based upon substantial evidence; disapproving the settlement in full; or severing the contested issue and approving the remaining uncontested portions. The regulations, by their terms, do not preclude the action taken by FERC here.

■ We also reject UMDG's contention that the Commission's action violates the principles enunciated by the Supreme Court in *Mobil Oil Corp. v. FPC,* 417 U.S. 283, 94 S.Ct. 2328, 41 L.Ed.2d 72 (1974). UMDG argues that *Mobil* requires the Commission to approve any contested settlement on the merits which is based on substantial evidence and that, where the record does not contain such evidence, the Commission may do one of two things: it can reject the settlement in its entirety, or it can sever the contested issue and set it for hearing.

---

**9.** The Commission did, however, approve a provision of the settlement severing an issue known as the "liquid and liquifiable hydrocarbon issue" and reserved that issue for a full hearing. Order Approving Settlement, *United Gas Pipe Line Co.,* 22 FERC (CCH) ¶ 61,094 (Feb. 3, 1983).

**10.** The Commission thus did not determine that the consolidated tax issue raised no genuine issue of material fact, contrary to the ALJ's determination. *See* Administrative Law Judge's Certification of Settlement Proposal, *United Gas Pipe Line Co.,* 21 FERC (CCH) ¶ 63,041 (Nov. 12, 1982).

However, nothing in *Mobil* or any other authorities relied upon by UMDG lends support to this contention. In *Mobil*, the Court held that the Federal Power Commission, FERC's predecessor agency, had authority to consider and approve on the merits a proposed contested settlement of a rate dispute. In doing so, the Court stated that an uncontested settlement may be approved if it is " 'in the general interest of the public' " but, " 'even if there is a lack of unanimity, it may be adopted as a resolution *on the merits....* ' " 417 U.S. at 314, 94 S.Ct. at 2348 (quoting *Placid Oil Co. v. FPC*, 483 F.2d 880, 893 (5th Cir. 1973)) (emphasis in original). The Court in *Mobil* went on to emphasize that "[t]he choice of an appropriate rate structure for the rate order is a matter of Commission discretion...." *Id.*

The *Mobil* Court's recognition that the Commission *"may"* approve a contested settlement on the merits by no stretch of the imagination translates into a requirement that the agency *must* do so. In fact, the regulations now governing the Commission's approval of rate settlements belie this sweeping interpretation of *Mobil.* These regulations, as we have already seen, expressly permit the Commission to sever uncontested portions of a proposed settlement and allow the agency to approve those portions of the settlement under the general public interest standard, without a finding on the merits that the proposed rates are just and reasonable. UMDG advances no contention that these regulations are inconsistent with *Mobil;* in fact, UMDG's primary complaint is that FERC did not utilize the severance authority contained in the regulations.

■ Equally pertinent, *Mobil* involved a situation entirely distinct from the one at issue here. In that case, the Commission's decision to approve the settlement over the objection of certain parties actually bound those objecting parties to the terms of the settlement. Hence, those parties were being forced to accept a settlement to which they had objected in the first instance. In this case, in contrast, UMDG, as sole objector to the settlement, is in no wise being required to accept the settlement against its will. To the contrary, FERC's action permits UMDG to preserve its objection, while allowing the noncontesting parties to have the benefit of a settlement determined by the Commission to be fair and reasonable and in the public interest.[11] Finally, *Mobil* and this court's pre-*Mobil* decision in *Pennsylvania Gas & Water Co. v. FPC*, 463 F.2d 1242 (D.C.Cir.1972), recognize that settlements of rate proceedings are to be encouraged. The Commission's action in this case serves this salutary policy by preserving a settlement for all nonobjecting parties and by also permitting UMDG to preserve its objection.[12] We find

11. UMDG also argues that this court's decision in *Pennsylvania Gas & Water Co. v. FPC*, 463 F.2d 1242 (D.C.Cir.1972), requires that any contested settlement be approved on the merits. In *Pennsylvania Gas*, the court rejected an argument that the FPC's use of summary settlement procedures, later approved by the Supreme Court in *Mobil*, violated a contesting party's procedural due process rights. *Id.* at 1252. The court held that the FPC could refuse to grant an evidentiary hearing when there are no genuine issues of material fact. *Id.* at 1246. That case, however, in no way suggests that the procedure used here is invalid. It, like *Mobil*, merely recognizes the Commission's authority under statute, regulation, prior agency practice, and judicial precedent to approve a settlement proposed by some parties but objected to by others and to bind *all* parties to the terms of that settlement and holds that such an action does not violate the procedural due process rights of the object-ing party. UMDG has not claimed, as we understand its argument, that the Commission's procedure violates its due process rights. *Pennsylvania Gas*, therefore, like *Mobil*, does not support UMDG's contention that FERC's action in this case is invalid.

12. UMDG strenuously urges that the Commission's action in this case sets a dangerous precedent by defining "contested settlement" out of the regulations and by enabling the Commission to force recalcitrant pipeline customers to drop objections by threatening to require them to undergo a fullblown rate proceeding with the attendant high costs. The Commission's action assuredly does not define "contested settlement" out of the regulations, since, as we have described above, it constitutes an application of clause (1)(ii)(B) of paragraph (h) of the regulation, dealing with "Contested Offers of Settlement." As for the coercion of recalcitrant pipeline cus-

nothing in *Mobil* or any other precedents cited by UMDG to preclude the Commission from taking this action.

## 2. *Prior Commission Precedent.*

The petitioner next argues that FERC's action constitutes a marked departure from prior Commission precedent. According to UMDG, in a number of recent settlements, the Commission has approved the uncontested portions of the settlement and severed the contested portions. UMDG, accordingly, contends that FERC's refusal to do so in this case represents an unexplained departure from prior agency practice. The Commission, in contrast, argues that, far from being unprecedented, the very procedure utilized here has been followed in several prior cases. In our view, the Commission has by far the more persuasive argument.

 It is, of course, elementary that an agency must conform to its prior practice and decisions or explain the reason for its departure from such precedent. *See Greater Boston Television Corp. v. FCC,* 444 F.2d 841, 852 (D.C.Cir.), *cert. denied,* 403 U.S. 923, 91 S.Ct. 2233, 29 L.Ed.2d 701 (1971) (agencies must give a reasoned analysis for departures from prior agency practice); *Mississippi Valley Gas Co. v. FERC,* 659 F.2d 488, 506 (5th Cir.1981). UMDG contends that FERC has failed to conform

to this mandate. Specifically, UMDG argues that in one recent settlement, the Commission severed the consolidated tax issue and required the parties to litigate that issue, even though the mandated hearing was prior to the outcome of the remand of that issue in *City of Charlottesville v. FERC,* 661 F.2d 945 (D.C.Cir.1981). *Southern Natural Gas Co.,* 17 FERC (CCH) ¶ 61,036, at 61,075 (Oct. 8, 1981). In another settlement approval order issued on the same day as the order denying rehearing in this case, the Commission reserved decision on the consolidated tax issue after a full hearing, stating that the issue was still pending in the remanded *City of Charlottesville* case. *Potomac Edison Co.,* 23 FERC (CCH) ¶ 61,106 (April 19, 1983).[13]

FERC argues, in contrast, that the procedure employed in this case is supported by a number of precedents under the analogous provision of the Federal Power Act ("FPA"). In *Potomac Edison Co.,* 17 FERC (CCH) ¶ 61,167 (Nov. 20, 1981), the Commission followed the exact procedure used in this case. In that proceeding, all parties save one agreed to a proposed settlement. The contesting party sought to sever and reserve one issue, known as the "price squeeze issue." As in this case, the Commission determined that the contesting party had rejected the proposed settlement, and the agency therefore approved the set-

---

tomers: where a settlement is reasonable, we think it cannot be coercion to leave a party who declines to join it to his legally prescribed remedies. Moreover, there is no hint in this case of the use of improper procedures. Finally, UMDG is not being unduly burdened because it was not forced to accept the terms of the settlement. *Cf. Pennsylvania Gas & Water Co. v. FPC,* 463 F.2d 1242, 1252 (D.C.Cir.1972) (settlement may be approved on the merits without evidentiary hearing when such action is fair, just, equitable, and in accord with the procedure required by law).

**13.** UMDG also notes that in *Texas Eastern Transmission Corp.,* 11 FERC (CCH) ¶ 61,016, at 61,023 (April 14, 1980), the Commission refused to sever the consolidated tax issue while the *City of Charlottesville* case was pending before this court, and the Commission instead decided the issue on the merits. Order Denying Application for Rehearing, *Texas Eastern Transmission Co.,*

11 FERC (CCH) ¶ 61,248 at 61,492 (June 2, 1980). This court thereafter remanded the *Texas Eastern* proceeding for reconsideration of the consolidated tax issue in light of the court's supervening decision in *City of Charlottesville. Municipal Defense Group v. FERC,* No. 80–1744 (Dec. 21, 1981). Contrary to UMDG's characterization of this court's order in *Municipal Defense Group,* the court did *not* reverse the orders—it merely *remanded* the case for reconsideration in light of *City of Charlottesville.* As noted above, *City of Charlottesville* reversed the Commission's orders in that case applying the "stand-alone" policy on the ground that they were not supported by substantial evidence. *See* note 1, *supra.* Thus, contrary to UMDG's suggestion, it is not at all clear that the Commission could not determine that, in this case, there are no genuine issues of material fact regarding the consolidated tax issue and decide the issue as a matter of law.

tlement as to the other parties as an uncontested settlement. The Commission, as here, then remanded the case for a full rate hearing as to the one contesting party. Thus, at least one Commission precedent supports the procedure followed in this case.[14]

Critically in this respect, UMDG has cited no Commission precedent whatever supporting the specific procedure it desires the Commission to adopt, namely severing the contested issue and yet holding in abeyance the hearing on the reserved issue. In addition, UMDG's attempts to distinguish the precedents relied upon by the Commission to support its action here are unavailing. UMDG principally argues that none of these precedents relied upon by FERC involved a contested issue where the law is in a state of flux, as it contends was the situation as to the consolidated tax issue at the time the Commission decided this case. The *Potomac Edison* case, however, *did* involve such an issue—the "price squeeze issue."[15] As noted above, in *Southern Natural Gas*, the Commission, while agreeing to sever the issue, ordered an *immediate* hearing on the issue.[16] Similarly, the *Potomac Edison* case cited by UMDG involved reservation of the consolidated tax

issue *after* a full hearing pending the outcome on remand of the *City of Charlottesville* decision. Because no settlement was involved in that case, it is clearly inapposite to the circumstances before us.[17]

Further, to the extent that UMDG contends that the Commission failed adequately to explain its refusal to sever this issue, we are of the view that the Commission's explanation is ample and supported by the record. The Commission recognized its authority to sever issues by stating "we believe it proper to sever portions of proposed contested settlements when appropriate to do so." Order Denying Rehearing, *United Gas Pipe Line Co.*, 23 FERC (CCH) ¶ 61,-101 (April 19, 1983). The Commission clearly stated that it refused to invoke the severance procedure in this case because the settlement "represented an inseparable package." *Id.* at 61,246. The record also supports the Commission's characterization of the settlement as an "inseparable package." *See* Joint Appendix (J.A.) 31–35 (Reply Comments of United). Thus, the Commission's reasoning for its refusal to sever the consolidated tax issue in this case is adequately articulated and reasoned.

In sum, the Commission's decision to approve the settlement as to all noncontest-

---

**14.** The Commission also relies on *Boston Edison Co.*, 3 FERC (CCH) ¶ 61,077 (April 28, 1978) and *Delmarva Power & Light Co.*, 6 FERC (CCH) ¶ 61,084 (Jan. 30, 1979) as relevant authority. Although the contesting parties in those cases sought to hold out issues while also receiving the interim settlement rates or refunds, they demonstrate that FERC has approved, as to noncontesting parties, a settlement which it deems to be in the public interest, while permitting a contesting party to litigate the contested issue in a full rate proceeding. Thus, these cases also rest on a rationale similar to that relied upon in *Potomac Edison* and this case.

**15.** *See Cities of Batavia v. FERC*, 672 F.2d 64, 86–91 (D.C.Cir.1982) (discussing price squeeze issue in public utility rate cases).

**16.** Although FERC has argued that the timing of *Southern Natural Gas* distinguishes it from this case, the Commission, in its orders, did not refer to that case or attempt to distinguish this case on those grounds. We therefore cannot consider this as a ground for upholding the Commission's action in this case. *See SEC v.*

*Chenery Corp.*, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943). Moreover, even if we were to consider this argument, it would be unavailing. At the time of both of these orders, the Commission's decision on remand from the *City of Charlottesville* case was still pending. Thus, the Commission's position on the consolidated tax issue was no more in flux at that time than it was at the time the Commission issued the orders in this case.

**17.** Moreover, *Potomac Edison* was a decision on the merits after a full hearing. If the Commission had decided the consolidated tax issue in that docket, it would have had precedential weight on the merits of the issue—unlike a settlement, which bears no precedential weight. The Commission's decision to hold the consolidated tax issue in abeyance in that case clearly depended on the "relative inferiority" of the record developed in that case for the resolution of the consolidated tax issue and not on the severability issue. *Potomac Edison Co.*, 17 FERC (CCH) ¶ 61,167 (Nov. 20, 1981). Thus, UMDG finds little support for its position in the rationale of this case.

ing parties and not to sever the consolidated tax issue and reserve it for hearing is not inconsistent with prior Commission precedent. We therefore reject UMDG's invitation to overturn the Commission's orders on that ground.

### 3. *The Antidiscrimination Provision of the NGA.*

UMDG argues, finally, that the Commission's action contravenes the proscription against unduly discriminatory rates set forth in section 4 of the NGA, 15 U.S.C. § 717c(b) (1982). That provision prohibits natural gas companies subject to the Commission's jurisdiction from

(1) mak[ing] or grant[ing] any undue preference or advantage to any person or subject[ing] any person to any undue prejudice or disadvantage, or

(2) maintain[ing] any unreasonable difference in rates, charges, service, facilities or in any other respect, either as between localities or as between classes of service.

According to UMDG, the result of FERC's approval of the instant settlement is that United will charge UMDG's members different rates from those charged other United customers receiving the same service. This difference in rates, under UMDG's theory of the case, is unduly discriminatory. UMDG further contends that the Commission's policy permits "rate discrimination" based upon the financial resources of the party or parties who seek to reserve statutory rights in a particular settlement and opines that natural gas pipelines could use FERC's misguided approach to adopt a "divide and conquer" strategy in defeating objections to proposed rate increases.[18]

■■■ This court recently rejected this very argument in the context of a proceeding under section 205(b) of the FPA, 16 U.S.C. § 824d(b) (1982), which contains language identical in all pertinent respects to that in section 4 of the NGA. In *Cities of Bethany, et al. v. FERC,* 727 F.2d 1131 (D.C.Cir.1984), this court held that a rate disparity among customers of the same public utility that was solely the result of a settlement among some of the parties was not unlawfully discriminatory. 727 F.2d at 1138–1140. In so concluding, the court observed that the mere fact of a rate disparity does not establish unlawful discrimination and that rate differences "may be justified and rendered lawful by 'facts—cost of service or otherwise.'" *Id.* at 1139 (footnote citations omitted). Thus, the court observed that fixed rate contracts between the parties may justify a rate disparity. *Id.* at 1139 (citing *Town of Norwood v. FERC,* 587 F.2d 1306, 1310 (D.C.Cir.1978); *Boroughs of Chambersburg, et al. v. FERC,* 580 F.2d 573, 577 (D.C.Cir.1978) (per curiam)).[19] The court recognized, however, that settlements between a utility and a customer may not be completely analogous to a fixed-rate contract because settlement agreements may extend only for a specified term of years. The court nonetheless concluded that a settlement agreement reached in good faith and not involving improper conduct, and which does not unduly burden a customer group, may justify a rate disparity, since settlements would be severely discouraged if rate disparities arising out of settlements were considered unlawfully discriminatory. *Id.* at 1139–1140. The court concluded that the criteria were met and therefore upheld the settlement at issue there. *Id.* at 1140.

The same reasoning applies to the settlement at issue here. UMDG has advanced no argument that the instant settlement reflects a "sweetheart deal" or that im-

---

**18.** This argument assumes that the remand for a hearing on the rates will necessarily result in a full trial with the attendant costs of such a hearing—an expense UMDG argues it cannot bear. UMDG overstates its case in making this assumption. It is not at all obvious that UMDG will have to litigate each and every issue in this case fully, since United and UMDG may enter into stipulations regarding various issues.

**19.** *See also City of Frankfort v. FERC,* 678 F.2d 699, 707 & n. 13 (7th Cir.1982) (holding that there was no unduly discriminatory disparity in rates when a company discontinued fixed rate contracts and offered favorable new contract terms to parties who rejected them).

proper means were used to reach it. We therefore conclude that FERC's approval of the settlement does not violate section 4 of the NGA.

For the foregoing reasons, the Commission's orders are affirmed.

*Affirmed.*