866 F.2d 477
 275 U.S.App.D.C. 276
 TRANSCONTINENTAL GAS PIPE LINE CORPORATION, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Niagara Mohawk Power Corporation, East Ohio Gas Company, et
al., Public Service Electric and Gas Co., Pennzoil Co.,
Peoples Natural Gas Company, The Brooklyn Union Gas Company,
Hope Gas, Inc., Philadelphia Electric Company, Public
Service Commission of the State of New York, Texas Eastern
Transmission Corp., Process Gas Consumers Group, CNG
Transmission Corporation, Boston Gas Company, et al., Long
Island Lighting Company, Intervenors.
 No. 88-1000.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Nov. 10, 1988.
Decided Jan. 27, 1989.
 
 Thomas F. Ryan, Jr., with whom Robert G. Hardy, Washington, D.C., John W. Ebert and Anthony J. Ivancovich were on the brief, for petitioner.
 Joel M. Cockrell, Attorney, F.E.R.C., with whom Catherine C. Cook, General Counsel and Jerome M. Feit, Sol., F.E.R.C., Washington, D.C., were on the brief, for respondent.
 Harry H. Voigt, for Niagara Mohawk Power Corp., with whom Mark G. Magnuson, Washington, D.C., James L. Blasiak, for Consolidated Natural Gas Service Co., Inc., Stephen E. Williams, John E. Holtzinger, Jr., Washington, D.C., Kevin J. Lipson, for CNG Transmission Corp., Linda Gillespie Stuntz, Washington, D.C., Richard D. Avil, Jr., Cleveland, Ohio, for East Ohio Gas Co. and The River Gas Co., Marc A. Halbritter, R.S. Elliott, for Hope Gas, Inc., Mindy A. Buren, for Niagara Mohawk Power Corp., Kevin J. McKeon, for The Peoples Natural Gas Co., Christine P. Benagh, Neal J. Cabral, Washington, D.C., Richard N. George, Rochester, N.Y., for Rochester Gas and Elec. Corp., were on the brief, for joint intervenors CNG Transmission Corp., et al.
 David L. Konick, Washington, D.C., for The Brooklyn Union Gas Co., James F. Bowe, Jr., for Long Island Lighting Co., Kathleen A. Kane, for Philadelphia Elec. Co., Joseph M. Oliver, Jr., for New Jersey Natural Gas Co., William R. Hoatson, Newark, N.J., and Shawn P. Leyden, Trenton, N.J., for Public Service Elec. and Gas Co., were on the brief for joint intervenors The Brooklyn Union Gas Co., et al.
 Before WALD, Chief Judge, and STARR and SENTELLE, Circuit Judges.
 Opinion for the Court filed by Circuit Judge STARR.
 STARR, Circuit Judge:
 
 
 1
 Transcontinental Gas Pipeline Corporation ("Transco") seeks review of two orders of the Federal Energy Regulatory Commission approving a contested settlement of rate increases filed by Consolidated Natural Gas Transmission Corporation. Consolidated Gas Transmission Corp., 38 FERC p 61,150 (1987) ("Order Approving Offer of Settlement Subject to Conditions"); Consolidated Natural Gas Transmission Corp., 41 FERC p 61,130 (1987) ("Order Granting Rehearing and Clarifications in Part"). For the reasons set forth below, we deny Transco's petition on the ground that, under our decision in Papago Tribal Util. Auth. v. FERC, 628 F.2d 235 (D.C.Cir.1980), the issues presented are not currently fit for judicial review.
 
 
 2
 * This case arises out of Consolidated's filing, on July 1, 1985, of a proposed rate increase. FERC accepted for filing and immediately suspended the proposed increase, thereby making the rates effective January 1, 1986, but subject to refund if the Commission ultimately determined that the filed rate is unreasonable. Consolidated Gas Transmission Corp., 32 FERC p 61,203, 61,471 (1985); see 15 U.S.C. Sec. 717c(e) (1985) (FERC's authority, under section 4 of the Natural Gas Act, to accept and suspend effectiveness of filed rates).
 
 
 3
 Consolidated's filed rate is based largely on two factors: the filed cost of service to Consolidated's customers and a method for allocating that cost of service among those customers. Consolidated's filing was based on a new (and higher) cost of service, but did not alter the existing cost allocation methodology (the so-called "100-A" method), which had previously been approved by the Commission for a five-year period ending March 31, 1986. Consolidated Gas Transmission Corp., 14 FERC p 61,291 (1981). In its July 31, 1985 suspension order, FERC questioned the continued appropriateness of the 100-A methodology and thus invited the parties to address that issue in the forthcoming hearing on Consolidated's proposed rate increase. 32 FERC at p 61,471.
 
 
 4
 As luck would have it, the proposed hearing was obviated, in principal part, by a settlement entered into in early February 1986. 35 FERC p 63,006 (1986) ("Certification of a Contested Partial Settlement"). As to the primary bone of contention, the settlement fixed Consolidated's cost of service (the "settlement cost of service") at a level below that contained in Consolidated's rate filing (the "filed cost of service"). The complex, multi-faceted settlement went on to resolve all issues save for the appropriate method for allocating cost of service among Consolidated's customers. Under the terms of the settlement, that issue was reserved for subsequent resolution.
 
 
 5
 Transco does not challenge the settlement in these various respects. Its petition is directed, instead, at Article VII of the agreement. That provision purports to fix the distribution of costs among Consolidated's customers pending resolution of the cost allocation issue. Under Article VII, all of Consolidated's customers would, between January 1, 1986 and March 31, 1986, pay rates based on the settlement cost of service and the 100-A cost allocation method. However, from April 1, 1986 until the Commission's resolution of the cost allocation issue, Transco and a group of its customers (known as GSS storage customers) would pay a higher rate computed by applying the 100-A allocation method to the filed (i.e., higher) cost of service. Order Approving Offer of Settlement Subject to Conditions, J.A. at 126. The settlement, the attentive reader will have deduced, requires Transco and its GSS customers to pay more than would have been the case had the settlement (i.e., lower) cost of service been applied to them. This displeases Transco. Perhaps in recognition of Transco's understandable desire to pay less, Article VII went on to provide that this additional amount would be deposited in an escrow account, and that Transco and the GSS customers would be entitled to the amount paid in escrow, plus interest, if they ultimately "prevail" on the cost allocation issue. Id.
 
 
 6
 Transco now challenges the legality of the interim charges imposed by means of the Article VII escrow mechanism. Transco advances two grounds of attack: first, that FERC's approval of the escrow provision unreasonably discriminates against Transco and its GSS customers and thus constitutes arbitrary and capricious action, 5 U.S.C. Sec. 706 (1985); and second, that the practical and legal effect of the escrow arrangement is to impose a retroactive rate change, a step flatly interdicted by section 5 of the Natural Gas Act. 5 U.S.C. Sec. 717d (1985); see also FPC v. Louisiana Power & Light Co., 406 U.S. 621, 643-44, 92 S.Ct. 1827, 1839-40, 32 L.Ed.2d 369 (1972).
 
 II
 
 7
 As we alluded to in the opening paragraph, the question whether Transco's challenge is presently reviewable is affected by our well-known decision in Papago Tribal Util. Auth. v. FERC, 628 F.2d 235 (D.C.Cir.1980).[1] In Papago, we looked to the Supreme Court's teaching that
 
 
 8
 [t]he ultimate test of reviewability is not to be found in an overrefined technique, but in the need of review to protect from the irreparable injury threatened in the exceptional case by administrative rulings which attach legal consequences to action taken in advance of other hearings and adjudications that may follow, the results of which the regulations purport to control.
 
 
 9
 Id. at 239, quoting Columbia Broadcasting System v. United States, 316 U.S. 407, 425, 62 S.Ct. 1194, 1204, 86 L.Ed. 1563 (1942). Mindful of this caution against elevating formalistic reasoning, in which we have all been exquisitely trained, above common-sense analysis (which we in the law sometimes overlook), we stated that reviewability would normally depend on (1) whether the challenged order was "final"; (2) whether postponing judicial review would subject the party seeking review to "irreparable injury"; and (3) whether the exercise of judicial review would not "invade the province reserved to the discretion of the agency." Id. Applying this tripartite framework, the Papago court went on to hold that FERC's decision not to reject a rate filing as patently unlawful was not reviewable.[2]
 
 
 10
 * With respect to the first inquiry, Transco's challenge to the settlement's escrow provision is similar in important respects to the question found unreviewable in Papago. There, we considered a challenge to FERC's decision to accept a proposed rate increase for filing, subject to refund pending the Commission's subsequent hearing and determination of the reasonable rate. We noted that, under the Commission's regulations, such a filing would be rejected if the rate filing was "so patently a nullity as a matter of substantive law that administrative efficiency and justice are furthered" by pretermitting the Commission's full development of the relevant facts during a subsequent hearing. Id. Mere acceptance of a rate for filing was considered by the court to be interlocutory, in contrast to the "quintessentially reviewable order" involving "a final determination by the Commission concerning the justness and reasonableness of a rate filing." Id. That was so even though, obviously, the higher rate embodied in the challenged filing would be charged and paid from the end of the suspension period until the eventual determination of the filed rate's legality.
 
 
 11
 Transco appears to view the escrow portion of the settlement as, in effect, a mechanism for altering the 100-A allocation method and thereby shifting a higher share of system costs to Transco and its GSS customers. Brief of Transco at 18. Indeed, Transco and its customers will obtain a refund of the escrow amount only if they "prevail" on the allocation issue before the Commission. In these respects, the Commission's order approving the settlement (and its escrow provision) seems quite akin to the interlocutory acceptance of a filed rate in Papago.
 
 
 12
 The present situation differs from Papago, however, in that the legality of the escrow account will not be considered at the upcoming hearing on the cost allocation issue. The parties are in cheerful agreement that only the latter issue is reserved for FERC's consideration and that Article VII expressly requires that the allocation method which emerges out of the hearing be applied prospectively only. Order Approving Offer of Settlement Subject to Conditions, J.A. at 129.
 
 
 13
 Now back to Papago. In that situation, the interim rate was before the Commission in the hearing because, under the statutory scheme, the regulated utility (or pipeline) is required to refund any amount paid in excess of the rate determined at the hearing to be just and reasonable. Here, in contrast, the amount of any refund is fixed by Article VII, rather than determined in a hearing under section 4 of the Natural Gas Act. In this sense, the order approving the settlement's escrow provision partakes more of the nature of a final order than the mere acceptance for filing of the filed rate under challenge in Papago.
 
 
 14
 Here, then, the Commission's order possesses certain attributes of both a "quintessentially reviewable" final order, on the one hand, and non-final orders that are unreviewable on the other. We therefore proceed to the second aspect of the Papago inquiry, namely, whether petitioner will suffer irreparable injury absent judicial intervention. It is in this respect, above all, that Transco's claim--at this stage--founders.
 
 B
 
 15
 In Papago, we held that acceptance of a rate filing did not impose "irreparable injury" on customers required to pay those rates. Papago, 628 F.2d at 240-41. We explained that "[a]lthough petitioner became liable to pay intervenor's new rates after the five month suspension period ended, its excess payments will be refunded, with interest, if the new rates are not proven to be just and reasonable." Id. at 240. Transco's situation with respect to the escrow is virtually identical to that of the challengers in Papago: If Transco prevails before the Commission on the cost allocation issue, the amount paid into escrow will be refunded (with interest).
 
 
 16
 Transco urges, however, that its claims are similar to those found reviewable in United Municipal Distributors Group v. FERC, 732 F.2d 202 (D.C.Cir.1984). Reply Brief at 8. Not quite. That case involved a claim that FERC could not exclude UMDG (the odd-person-out at the settlement table) from a settlement and thereby force the naysaying party to "bear the burden of a full-blown rate proceeding." UMDG, 732 F.2d at 206. We concluded that this claim was ripe largely because the burden imposed by the full hearing could not be remedied by later judicial intervention. Id. at 207.
 
 
 17
 Transco's conditional payments into the escrow account do not share this crucial characteristic. Transco maintains that, even if it loses on the allocation issue, it is still entitled to a refund of the escrow money because the escrow provision is unduly discriminatory, Brief of Transco at 12, and, in any event, a new allocation method can only be applied prospectively. Brief of Transco at 15-18. But Transco offers no hint that its interests are inadequately protected by judicial review following an adverse determination on the allocation issue. As Transco has failed to articulate an injury which cannot be remedied following the Commission's ultimate determination of the proper allocation method, we are persuaded that the second aspect of the Papago inquiry has not been satisfied.
 
 
 18
 It bears emphasis in this regard that Transco's failure to establish irreparable injury may well be sufficient, of itself, to render present judicial intervention unwise. Indeed, in the unique context of the filed rate doctrine, it may be especially appropriate to limit judicial review to "orders of a definitive impact, where judicial abstention would result in irreparable injury to a party." Papago, 628 F.2d at 238. In Papago itself, however, we did not limit the inquiry to a finding that no irreparable injury was threatened. In like manner, we move on here to the final issue--whether judicial review would unduly intrude into agency discretion in the rate-regulation arena.
 
 C
 
 19
 The Papago court concluded that review of an order accepting a rate filing would unduly intrude into agency discretion because the Commission, by lawful regulation, employed "a flexible standard of 'substantial compliance' " and "has broad discretion in deciding not to reject the tariff." Id. at 241-42. The discretionary element of the agency's decision in Papago is echoed here in Transco's contention that the Commission's approval of the escrow provision is arbitrary and capricious under the APA. 5 U.S.C. Sec. 706 (1985). Brief of Transco at 12. As Transco attacks FERC's exercise of its substantial (but, of course, not unlimited) discretion to approve contested settlements, this component of Transco's claim seems to us to fall comfortably within the third part of the Papago inquiry. For these reasons, we are satisfied that review would be inappropriately premature in the rate-regulation setting, which has been elucidated by our teaching in Papago.
 
 III
 
 20
 Transco also challenges the escrow provision as contrary to section 5 of the Natural Gas Act. 15 U.S.C. Sec. 717d (1985). In its view, the mechanism employed by the agency skirted the carefully framed structure erected by Congress. Specifically, Transco contends that, under section 5, any change in a filed or existing rate can only be given effect after a finding that the extant rate is no longer just and reasonable. See, e.g., Sea Robin Pipeline Co. v. FERC, 795 F.2d 182 (D.C.Cir.1985). In Transco's view, the escrow provision violates this scheme by, in effect, imposing a change in the (100-A) cost allocation method prior to the Commission's re-evaluation of this method. Brief of Transco at 15-18. As to this branch of Transco's argument, Transco's counsel at oral argument directed our attention to our familiar friend, Papago, and to the well-known Sierra-Mobile doctrine, see United Gas Pipeline v. Mobile Gas Service Corp., 350 U.S. 332, 76 S.Ct. 373, 100 L.Ed. 373 (1956), to support the proposition that issues of agency statutory authority are generally reviewable. The argument, while not without force, reads a bit too much into Papago and the Sierra-Mobile line of cases. First, as we have implied but not squarely stated, Papago did not involve a challenge to the agency's statutory authority. More importantly, we stated there that the impact of early judicial intervention on agency discretion was in the nature of a sufficient, but not necessary, reason for withholding review.
 
 
 21
 [A] nonfinal administrative order may be unreviewable--even though it might result in serious irreparable injury to a party--if immediate judicial review would undermine the authority of the agency acting within the scope of its discretion.
 
 
 22
 Papago, 628 F.2d at 243. In short, while Transco is correct in suggesting that its section 5 challenge to the Commission's order is primarily a matter of statutory interpretation (rather than review for abuse of discretion), this alone is insufficient to establish reviewability.
 
 
 23
 This point is underscored by the Sierra-Mobile line of cases. Under that doctrine, a utility cannot file a revised rate in violation of its contractual obligations. See Richmond Power & Light Co. v. FPC, 481 F.2d 490, 491-93 (D.C.Cir.) cert. denied, 414 U.S. 1068, 94 S.Ct. 578, 38 L.Ed.2d 473 (1973). Instead, the contractual rate must remain in effect until, in a subsequent proceeding, that rate is found to be unjust and unreasonable. Like Sierra-Mobile claims, Transco's claim that the escrow mechanism contravenes the statute is largely unrelated to the factual and regulatory issues set for later Commission hearing.
 
 
 24
 As we stressed in Papago, however, Sierra-Mobile challenges are immediately reviewable not only because they raise "a purely legal question of contractual interpretation, unrelated to the factual and regulatory issues to be decided in the later hearing," but because the injury inflicted by denial of such claims "cannot be restored upon review of a final order." Papago, 628 F.2d at 245. In contrast, Transco's injury (as previously discussed) may be remedied by judicial review following the Commission's hearing on the cost allocation issue.
 
 
 25
 We hasten to add that Papago does not purport to lay down a hard-and-fast "no review for now" rule in the rate-regulatory arena. To the contrary, where, as here, petitioner has failed to identify "irreparable injury" from withholding judicial review, Papago suggests that review may nonetheless be appropriate if the agency has clearly exceeded its statutory authority.
 
 
 26
 If an order accepting a rate filing were clearly outside the bounds of FERC's authority, ... immediate review might not invade the province of the agency.
 
 
 27
 Id. at 243 n. 20 (emphasis added).
 
 
 28
 Suffice it to say that the asserted illegality of FERC's action under section 5 does not strike us as manifestly self-evident for reasons we identify (admittedly) sketchily in the margin.[3] We are thus especially reluctant to wrestle with these issues absent an indication that present intervention is required to protect Transco from cognizable injury.[4]
 
 
 29
 For the foregoing reasons, the petition for review is
 
 
 30
 DENIED.
 
 
 
 [1]
 Although Papago involved section 313(b) of the Federal Power Act, 16 U.S.C. Sec. 825l (1985), we previously made clear that Papago 's analysis is similarly applicable to orders under section 19(b) of the Natural Gas Act, 15 U.S.C. Sec. 717r(b) (1985). United Municipal Distributors Group v. FERC, 732 F.2d 202, 206 n. 3 (D.C.Cir.1984)
 
 
 [2]
 In Papago, the court noted that a party might be "aggrieved" within the meaning of the relevant statute but still fail to obtain review if the issues presented were not ripe. Papago, 628 F.2d at 238. As the court found the issue unripe, it did not go on to discuss aggrievement. As will become evident, we here follow Papago 's lead
 
 
 [3]
 The Commission defended its decision in this particular on several grounds. FERC contended that, as the additional costs imposed on Transco and its customers reflect the existing methodology and the filed cost of service, and as this rate would have taken effect pursuant to the suspension order on January 1, 1986, the escrow account does not impose a retroactive rate change in violation of section 5 of the Act. Brief of FERC at 14. FERC also asserts that approval of the escrow arrangement constituted a legitimate exercise of its discretion to approve contested settlements. Id. at 15; see also 18 C.F.R. Sec. 305.602(h) (1988); United Municipal Distributors Group v. FERC, 732 F.2d at 202. In this respect, Transco's challenge appears to present delicate questions of the proper relationship between FERC's discretion to approve settlements and the prospectivity requirement of section 5. The Commission stressed during oral argument that acceptance of petitioner's section 5 argument would seriously impair effective dispute resolution. While we emphatically decline to address the merits of these arguments, their manifest intricacy and importance to the orderly administration of the rate-regulation scheme counsel against early judicial intervention
 
 
 [4]
 Transco argues that the requirement that funds be deposited in escrow, notwithstanding potential refund of that sum, constitutes sufficient injury to justify judicial review. Reply Brief of Transco at 7-8. We think not. Papago itself certainly looks in the other direction in this respect. Moreover, Transco's cited authority, FPC v. Tennessee Gas Transmission Co., 371 U.S. 145, 83 S.Ct. 211, 9 L.Ed.2d 199 (1962), stands for the unexceptionable proposition that a potential refund will not forestall judicial review where "experience has shown this [refund] to be somewhat illusory...." Id. at 154-55, 83 S.Ct. at 216. Transco has not pointed to any facts indicating that potential refund of the amount in escrow is inadequate, much less "illusory"
 More broadly, Papago teaches that the suspension and refund provisions of the Natural Gas Act raise somewhat unique reviewability issues. That is, in the absence of some showing that the statutory refund mechanism is inadequate to protect the party seeking review, we are reluctant to intervene before the refund mechanism has had the opportunity to work. See Papago, 628 F.2d at 240-41. Here, we are similarly reluctant to intervene absent a showing that the refund mechanism in a Commission-approved settlement subjects Transco to irreparable harm.