**CITIES OF CARLISLE AND NEOLA, IOWA, Petitioners,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent,**

**Iowa Power & Light Company, Intervenor.**

No. 82–1146.

United States Court of Appeals, District of Columbia Circuit.

Argued 13 Dec. 1982.

Decided 5 April 1983.

Petition for Review of an Order of the Federal Energy Regulatory Commission.

P. Daniel Bruner, Washington, D.C., with whom Frances E. Francis and Joseph L. Van Eaton, Washington, D.C., were on the brief, for petitioners. Daniel I. Davidson, Washington, D.C., also entered an appearance for petitioners.

Thajauna D. Miller, Atty., F.E.R.C., Washington, D.C., with whom Barbara J. Weller, Deputy Sol., F.E.R.C., Washington, D.C., was on the brief, for respondent.

J. Richard Tiano, Washington, D.C., with whom Lynn Vorbrich, Des Moines, Iowa, and Patricia M. McEvoy, Washington, D.C., were on the brief, for intervenor, Iowa Power and Light Co.

Before ROBINSON, Chief Judge, WILKEY, Circuit Judge, McGOWAN, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge WILKEY.

WILKEY, Circuit Judge:

Petitioners, the Cities of Carlisle and Neola, Iowa, seek review of the Federal Energy Regulatory Commission (FERC) decision [1] to accept without suspension a rate filing by the Iowa Power and Light Company (IP & L), which supplies electricity to petitioners.[2] We find that FERC's decision in this case is not subject to judicial review, and therefore must dismiss the petition.

## I. FACTS

Iowa Power and Light submitted its proposed rates in two abbreviated filings made on 8 September 1981.[3] The Cities petitioned FERC either to reject the filing on the ground that inadequate cost-of-service data had been provided or to suspend the

1. Letter Order (22 Dec. 1981), J.A. at 81–85; Order Denying Rehearing (22 Jan. 1982), J.A. at 94–96.

2. Iowa Power and Light is an Intervenor in this appeal.

3. Application of Iowa Power and Light Co. for Increased Rates for Electric Service to Carlisle and Neola, Iowa (filed 8 Sept. 1981), J.A. at 6–31. Abbreviated filings are permitted for rate increases of less than $200,000. 18 C.F.R. § 35.13(a)(2). An abbreviated filing requires only a summary statement of costs and of the methods used in calculating cost of service figures, rather than complete cost of service data. See id. §§ 35.12(b)(2) and (5).

rate filing for five months.[4] The Commission then notified IP & L that additional data would be required before the rates could be accepted for filing; Iowa Power and Light provided additional cost-of-service information on 28 October 1981.[5] However, Cities continued to argue that the rate filing should be rejected or suspended pending investigation because the information provided was distorted.[6]

After considering the submissions of the parties, FERC accepted the proposed rates for filing and terminated the docket in the case without hearing, pursuant to its power under section 205 of the Federal Power Act.[7] The Commission found that IP & L had "substantially complie[d]" with the filing requirements, but stated that its acceptance did not constitute approval of the rate.[8] After the Commission denied Cities' application for rehearing,[9] Cities filed a petition for review in this court.

## II. ANALYSIS

The Federal Power Act [10] provides two alternative avenues for FERC consideration of the lawfulness of electric rates and charges. Under section 205, the Commission may begin a proceeding when a new rate schedule is filed with it. In this proceeding, the burden of proof to show the

new charges to be reasonable falls upon the utility.[11] The Commission is directed to expedite these proceedings.[12] Pending an investigation, the Commission may suspend the operation of the schedule for up to five months. If the proceeding is not concluded at the end of the suspension period, the proposed rates go into effect, but the utility may be required to keep accounts so that amounts collected under the new rate schedule can be refunded to consumers.[13]

The second avenue for review of rates and charges is set out in section 206 of the Federal Power Act.[14] This section empowers the Commission to find a rate or charge unreasonable at any time after appropriate hearing. In these hearings, the burden of proof is upon the complaining party, or upon FERC, to show that the challenged rates are unjust or unreasonable.[15] Section 206 empowers the Commission to determine the just and reasonable rate, but does not provide for suspension of challenged rates or for refund of payments made under a rate schedule found to be unlawful.[16]

It is well settled that courts may not review the decision of the Commission to initiate proceedings under section 205.[17] A trilogy of cases in this circuit provides the basis for this conclusion. *Municipal Light Boards v. Federal Power Commission* held

4. Protest, Petition to Intervene, Motion to Reject, or in the Alternative, Request for Five-Month Suspension of the Cities of Carlisle and Neola (filed 5 Oct. 1981), J.A. at 44–52.

5. Letter from Iowa Power and Light Co. Submitting Additional Information (filed 28 Oct. 1981), J.A. at 53–55.

6. Supplement to Motion to Reject of the Cities of Carlisle and Neola, Iowa (filed 14 Dec. 1981), J.A. at 76–80.

7. 16 U.S.C. § 824d (1976 & Supp. V 1981).

8. Letter Order (22 Dec. 1981) at 2, J.A. at 82.

9. Order Denying Rehearing (22 Jan. 1982), J.A. at 94–96.

10. 16 U.S.C. §§ 791a–828c (1976 & Supp. V 1981).

11. *Id.* § 824d(c).

12. *Id.*

13. *Id.*

14. 16 U.S.C. § 824e (1976).

15. *Id.* § 824e(a).

16. *Id.*

17. Of course, once the Commission proceeds to a consideration of the lawfulness of rates, its final determination is subject to review. *Municipal Light Boards v. FPC,* 450 F.2d 1341, 1352 (D.C.Cir.1971). *See also Associated Press v. FCC,* 448 F.2d 1095 (D.C.Cir.1971). *Municipal Light Boards* had reserved the question of whether judicial review might be available for "an agency's failure, [based on an error] evident on the face of the papers, to enter even a one-day suspension order that maintains the agency's ability to require a substantiation of the rate increase and to provide effective refunds for rate increases not substantiated." 450 F.2d at 1352.

that the decision to suspend a rate filing and the length of the suspension period were not subject to judicial review.[18] *Papago Tribal Utility Authority v. Federal Energy Regulatory Commission* held that the decision to accept a rate filing was itself nonreviewable.[19] And in *Delmarva Power & Light Co. v. Federal Energy Regulatory Commission,* where the Commission accepted the rate schedule for filing and suspended the schedule for five months, we declined to review either decision.[20]

While these cases address attempts to obtain review of the Commission's decision to accept or to suspend rates, their reasoning is equally applicable to a FERC decision to accept and *not* to suspend.[21] In *Delmarva Power and Light* the court summarized the doctrine of these cases by concluding that the reviewability of an agency decision hinged upon analysis of the "practical function and consequences" of judicial intervention. The three determinative factors in

this analysis are "(1) the finality of the order signed, (2) the irreparability of injury to petitioner if review is refused, and (3) the degree to which review will invade a province reserved to agency discretion."[22] In light of the statutory scheme outlined above,[23] these factors dictate that we not review the merits of the Commission's decision in the present case.

First, we note that the Commission's decision is not a final determination of the lawfulness of the filed rate schedule.[24] We do not interpret the Commission's acceptance of the rate schedule for filing or its refusal to suspend the rates to be a decision that the rates are just and reasonable. Rather, the Commission here decides only that it will not scrutinize this schedule in a section 205 proceeding. Indeed, the Commission's order of 23 December 1981 expressly indicated that acceptance "does not constitute approval" of the rates and "is

---

18. 450 F.2d at 1351–52.

19. 628 F.2d 235, 242 (D.C.Cir.1980).

20. 671 F.2d 587 (D.C.Cir.1982). *See also Cities of Batavia, et al. v. FERC,* 672 F.2d 64, 77 (D.C.Cir.1982) (decision not to suspend is an exercise of discretion); *Village of Winnetka v. FERC,* 678 F.2d 354, 356 n. 7 (D.C.Cir.1982) (suspension decision nonreviewable); *Aeronautical Radio, Inc. v. FCC,* 642 F.2d 1221, 1234–35, 1247–48 (D.C.Cir.1980), *cert. denied,* 451 U.S. 920, 101 S.Ct. 1999, 68 L.Ed.2d 311 (1981) ("agency decisions relating to the acceptance of tariff filing are non-final orders"). *Connecticut Light and Power v. FERC* created a limited exception to nonreviewability, by holding that the FERC's decision to suspend a rate schedule could be vacated by the court where FERC had failed to give any intelligible reason for its decision. 627 F.2d 467, 473 (D.C.Cir.1982). *See also Municipal Light Boards,* 450 F.2d at 1350–51 (citing cases which created a similar exception for ICC).

21. In *Southern Ry. v. Seaboard Allied Milling Corp.,* 442 U.S. 444, 99 S.Ct. 2388, 60 L.Ed.2d 1017 (1979), and *Arrow Transp. Co. v. Southern Ry.,* 372 U.S. 658, 83 S.Ct. 984, 10 L.Ed.2d 52 (1963), the Supreme Court directly addressed, in the context of ICC rate proceedings, the reviewability issues raised by the present appeal. *Arrow Transportation* held that under the Interstate Commerce Act, *now codified at* 49 U.S.C. §§ 10101–11917 (Supp. IV 1980), the courts have no power to suspend railroad rates pending a hearing by the ICC; rather, this

power is vested exclusively in the ICC. *Southern Railway* held that an ICC decision not to suspend a proposed railroad rate increase, and not to conduct an investigation of its lawfulness, is not reviewable under the Interstate Commerce Act. It should be noted that the *Southern Railway* appeal arose in the same posture as the present case—*i.e.,* as an appeal from an agency decision not to suspend proposed rates.

We have previously observed that on these matters the structure of the Federal Power Act is "nearly identical" to that of the Interstate Commerce Act, *Papago Tribal Util. Auth.,* 628 F.2d at 242 n. 19. *See also Municipal Light Boards,* 450 F.2d at 1349–50 (interpreting Federal Power Act on the strength of analogous holding in *Arrow Transportation* ). On this basis, *Southern Railway* and *Arrow Transportation* provide strong precedent for our decision here. Moreover, as we shall note below, our reasoning closely follows that of the Supreme Court in these cases. Finally, we have followed *Southern Railway* in holding that the FCC's acceptance of a tariff without suspension or investigation is nonreviewable. *See Aeronautical Radio, Inc.,* 642 F.2d at 1234–35, 1248.

22. 671 F.2d at 592.

23. *See supra* p. 1260.

24. *Compare supra* note 17.

without prejudice to any findings or orders which ... may hereafter be made by the Commission."[25] Neither the Commission's action below nor our decision here has any effect upon a possible future determination as to the justness and reasonableness of the new rates.[26]

Second, the Commission's decision works no irreparable injury on petitioners. It is true that petitioners might suffer various procedural disadvantages in having to proceed via a section 206 rather than a section 205 proceeding. They, rather than the utilities, will bear the burden of proof; and even after successfully meeting this burden, they may be unable to obtain the refunds which would have been available under section 205.[27] We cannot hold, however, that these detriments amount to the "irreparable injury" which would prompt us to review an agency decision otherwise unreviewable. Petitioners are "injured" by the Commission's action only in that they no longer have available to them the more generous remedies granted by section 205.

But the statute establishes no right to these more generous provisions. Rather, the plain language of the Act places exclusively within the discretion of the agency the decision whether to institute proceedings under that section.[28] Moreover, as with the Interstate Commerce Act, "[t]he statute is silent on what factors should guide the Commission's decision; ... on the face of the statute there is simply 'no law to apply' in determining if the decision is correct."[29] The absence of standards by which to evaluate agency action militates strongly against judicial review.[30] Judicial review aimed at protecting petitioners from purported "injury" is thus foreclosed by the structure of the statute as well as its express language.[31] To hold that petitioners in this case have been irreparably injured by a purportedly faulty Commission decision would thus grant rights which Congress by plain language declined to create.

Finally, judicial review of the decision not to suspend rates would "create the hazard of forbidden judicial intrusion into the ad-

**25.** Letter Order (23 Dec. 1981) at 2, J.A. at 82.

**26.** *See Southern Ry.,* 442 U.S. 444, 453–54, 99 S.Ct. 2388, 2393–94, 60 L.Ed.2d 1017 (1979) (interpreting ICC order so as not to estop future consideration of the validity of filed rates.)

**27.** *See supra* p. 1260; *Municipal Light Boards,* 450 F.2d at 1351. *See also Southern Ry. v. Seaboard Allied Milling Corp.,* 442 U.S. 444, 454–55, 99 S.Ct. 2388, 2394, 60 L.Ed.2d 1017 (1979) (interpreting corresponding statutory provisions of Interstate Commerce Act).

**28.** *See* 16 U.S.C. § 824d(e) ("whenever any such new schedule is filed the Commission shall have authority ... to enter upon a hearing concerning the lawfulness of such rate...."); *see also Southern Ry.,* 442 U.S. at 455–56, 99 S.Ct. at 2394–95 (interpreting similar language in Interstate Commerce Act).

**29.** *Southern Ry.,* 444 U.S. at 454, 99 S.Ct. at 2394.

**30.** *See id.* at 455–56, 99 S.Ct. at 2394–95; *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971); *Barlow v. Collins,* 397 U.S. 159, 166, 90 S.Ct. 832, 837, 25 L.Ed.2d 192 (1970).

**31.** Viewed in the light of our previous decisions, *see supra* pp. 1260–1261, petitioners' argument would distort the statutory scheme in another way. Our prior decisions establish that the FERC enjoys absolute discretion in its decision to suspend a rate. Were a decision *not* to suspend reviewable on its merits, this would in effect force FERC to suspend a rate filing whenever it could think of no good reason not to do so, and would thereby create a statutory presumption in favor of suspension. Of course, such a presumption finds absolutely no support in the statute itself.

We note also that there is no significant qualitative difference between the effect on consumers from having to pay higher rates that may turn out to be unjust or unreasonable, as in this case, and the effect on utilities of being unable to collect higher rates that may turn out to be just and reasonable, as when rates are suspended. Since utilities cannot usually collect in one period amounts they were entitled to collect but did not in a prior period, both effects or "injuries" are equally irreparable. Nevertheless, our cases have held the latter decision—the decision to suspend—to be unreviewable. *See also Southern Railway,* 442 U.S. at 459 n. 12, 99 S.Ct. at 2397 n. 12 (suggesting that even when recovery of losses incurred because of a decision not to suspend is impossible, that decision is unreviewable). A like result is called for here.

ministrative domain." [32] As the Supreme Court has emphasized in reference to the ICC, the power to suspend rates is granted to the agency to preserve its jurisdiction in ratemaking decisions.[33] Judicial review of the decision to accept rates would subvert the exercise of this jurisdiction in several ways. First, in reviewing a decision not to suspend, courts must consider the reasonableness and lawfulness of the rates in advance of full administrative consideration. But there remains the possibility that the Commission will consider the substantive lawfulness of the rate schedule through a section 206 proceeding. Review of the decision not to suspend would thus lead to judicial consideration of issues which the Commission might face in the subsequent proceeding.[34] Courts would be making the complex and technical rate decisions which Congress determined that the Commission should make in the first instance;[35] and different reviewing courts, when reaching diverse results, would engender confusion and inequitable treatment.[36]

Second, judicial review of the decision not to suspend and not to investigate a challenged rate would enormously interfere with the agency's control of its own resources and disrupt its day-to-day operation. The decision to investigate under section 205 requires the Commission to conduct expedited proceedings[37] and puts great demands on the Commission's investigatory resources.[38] When deciding to suspend and investigate a rate schedule under section 205 the Commission must consider the wisdom of focusing its resources on *this* schedule rather than others and to balance the advantages of proceeding under section 205

rather than under section 206. The decisions how to utilize its limited resources and what procedures to follow with regard to timing, burden of proof and remedy are uniquely within the competence of the Commission in the first instance. These decisions not only involve a comparative consideration of the agency's entire docket and the other filings before it—information not before the court—but also call upon agency expertise in evaluating the complex economic and technical factors underlying a rate filing, expertise which the courts cannot match.

FERC's decision to accept rates without suspension thus satisfies none of the three criteria for reviewability set out in *Delmarva Power and Light*. It is not a final determination of the lawfulness of rates; it does not work irreparable injury; and its review by this court would unduly interfere with the exercise of responsibilities properly reserved to the Commission. We therefore hold that the Commission's decision to accept IP & L's rates without suspension is not subject to judicial review and direct that the petition for review be

*Dismissed.*

---

**32.** *Arrow Transp.*, 372 U.S. at 670, 83 S.Ct. at 990.

**33.** *Southern Ry.*, 442 U.S. at 460, 99 S.Ct. at 2397; *Arrow Transp.*, 372 U.S. at 663–64, 669–72, 83 S.Ct. at 986–87, 990–91. *See also Papago Tribal Util. Auth.*, 628 F.2d at 242–43.

**34.** The procedural posture of this case as interpreted by petitioners illustrates this danger. Were we to interpret the decision not to suspend as a final determination of the substantive validity of the rate schedule, further section 206 action would be estopped.

**35.** *See Arrow Transp.*, 372 U.S. at 670–71, 83 S.Ct. at 990–91.

**36.** *Id.* at 663–66, 83 S.Ct. at 986–88.

**37.** 16 U.S.C. § 824d(e).

**38.** *Cf. Southern Ry.*, 442 U.S. at 457, 99 S.Ct. at 2395 (increase in workload counsels against reviewability of ICC investigation decisions).