**CITIES OF CARLISLE AND NEOLA, IOWA, Petitioners,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent,**

**Iowa Power & Light Company, Intervenor.**

No. 82–1146.

United States Court of Appeals, District of Columbia Circuit.

Argued 23 March 1984.

Decided 10 Aug. 1984.

As Amended 16 Aug. 1984.

Frances E. Francis, Washington, D.C., with whom Joseph Van Eaton, P. Daniel Bruner, Daniel I. Davidson and Ben Finkelstein, Washington, D.C., were on the brief, for petitioner.

Barbara J. Weller, Deputy Sol., Federal Energy Regulatory Commission, Washington, D.C., with whom Charles A. Moore, General Counsel and Thajauna D. Miller,

Atty., Federal Energy Regulatory Commission, Washington, D.C., were on the brief, for respondent. Jerome M. Feit, Atty., Federal Energy Regulatory Commission, Washington, D.C., also entered an appearance for respondent.

J. Richard Tiano, Washington, D.C., with whom Lynn K. Vorbrich, Des Moines, Iowa, and Patricia M. McEvoy, New York City, were on the brief for intervenor, Iowa Power & Light Company.

Robert A. O'Neil, Washington, D.C., was on the memorandum in support of the petition for rehearing for amicus curiae, Mid-Tex Generation, et al. urging reversal.

Diane L. McIntire, Washington, D.C., was on the memorandum in support of the petition for rehearing for amicus curiae, Iowa State Commerce Commission urging reversal.

Louis J. Caruso and Edward L. Petrini, Lansing, Mich., were on the memorandum in support of the petition for rehearing for amicus curiae, State of Michigan urging reversal.

Robert H. Bear, Washington, D.C., was on the memorandum in support of the petition for rehearing for amicus curiae, Rufus L. Edmisten, Atty. Gen., of the State of North Carolina, Raleigh, N.C., urging reversal.

Alan H. Richardson, Washington, D.C., was on the memorandum in support of the petition for rehearing for amicus curiae, American Public Power Association urging reversal.

Dennis J. Robert, II, Providence, R.I., was on the memorandum in support of the petition for rehearing for amicus curiae, The State of Rhode Island urging reversal.

William T. Miller, Washington, D.C., was on the memorandum in support of the petition for rehearing for amicus curiae, American Public Gas Association urging reversal.

Before ROBINSON, Chief Judge, WILKEY, Circuit Judge and McGOWAN, Senior Circuit Judge.

WILKEY, Circuit Judge:

Petitioners, the Cities of Carlisle and Neola, Iowa (Cities), seek review of two orders [1] of the Federal Energy Regulatory Commission (FERC) accepting without suspension a rate filing by the Iowa Power and Light Company [2] (IP & L). We affirm the Commission's orders.

## I. FACTS

Iowa Power and Light submitted proposed rates in two abbreviated filings made on 8 September 1981.[3] The Cities petitioned FERC either to reject the filing on the ground that inadequate cost-of-service data had been provided or to suspend the rate filing for five months.[4] The Commission then notified IP & L that additional data would be required before the rates could be accepted for filing; Iowa Power and Light provided additional cost-of-service information on 28 October 1981.[5] The Cities continued to argue that the rate filing should be rejected or suspended pend-

---

1. Letter Order (22 Dec. 1981), J.A. at 81–83; *Iowa Power & Light Co.,* 18 F.E.R.C. ¶ 61,025 (1982).

2. Iowa Power & Light Company is an intervenor in this appeal.

3. Application of Iowa Power and Light Company for Increased Rates for Electric Service to Carlisle and Neola, Iowa (filed 8 Sept. 1981), J.A. at 6–31. Abbreviated filings are permitted for rate increases of less than $200,000. 18 C.F.R. § 35.13(a)(2)(i)(A) (1983). An abbreviated filing requires only a summary statement of

costs and of the methods used in calculating cost-of-service figures, rather than complete cost-of-service data. *See id.* § 35.12(b)(2), (5) (1983).

4. Protest, Petition to Intervene, Motion to Reject, or in the Alternative, Request for Five-Month Suspension of the Cities of Carlisle and Neola, Iowa (filed 5 Oct. 1981), J.A. at 44–52.

5. Letter from Iowa Power & Light Co. Submitting Additional Information (filed 28 Oct. 1981), J.A. at 53–55.

ing investigation because the information provided was distorted.[6]

In a letter order the Commission summarily terminated the docket based on only preliminary analysis, and allowed the proposed rates to go into effect without suspension. The failure to suspend was based on a misreading of the record by the Commission. Believing erroneously that the Cities had not specifically challenged the level of the increased rates, the Commission treated the case as a "consent filing" and stated that its acceptance of the filing did not constitute approval of the rate.[7]

The Cities promptly objected to the Commission's failure to address their challenge to the reasonableness of the rates. On rehearing the Commission acknowledged that it had overlooked a supplementary pleading filed by the Cities. FERC then found on the basis of the pleadings that the rates were not excessive, and that no hearing need be held because the rates would not be unjust and unreasonable even if the Cities could prove every factual allegation made. Because the Commission found the rates justified, it found that there was no reason to suspend them.[8]

The Cities appealed FERC's rulings to this Court. The Cities argued that (1) the decision was not supported by substantial evidence; (2) they were entitled to more than a paper hearing so that they could engage in discovery and develop a record to challenge the reasonableness of the rates; and (3) FERC had not adequately addressed their objections.

In the first hearing of this case this Court believed from the record and from the agency's statements at oral argument that the agency had acted under § 205 of the Federal Power Act, 16 U.S.C. § 824d (1982), had merely failed to suspend the rate, and thus had not yet issued a final order in the case. The court thus dismissed the case because no reviewable order had been entered by the agency.[9]

After the prior opinion issued, FERC asserted that it had acted under § 206 of the Act, 16 U.S.C. § 824e (1982), and that its actions were final and reviewable. This case was scheduled for rehearing.

## II. ANALYSIS

### A. *Paper Hearing*

In this case the Commission granted no hearing, choosing instead to decide the case on the filings. Petitioners argue that this was an abuse of discretion. The Commission has broad discretion in deciding whether to grant a hearing, and this court previously has upheld the power of the Commission to dispose of cases on a "paper hearing." [10] In those cases there was "no need for more than a paper hearing" because the Commission was able to consider fully the issues without recourse to more formal procedures.[11]

In this case, as in those cases, the Commission had the power to resolve the issues based on only a paper hearing. The Cities had no right to a formal hearing or trial-like procedures. At the same time, however, the Cities were entitled to have their objections considered by the Commission. The issue thus becomes whether the Commission adequately addressed the issues raised by the Cities.

### B. *Merits*

The Federal Power Act provides that "[t]he finding of the Commission as to the facts, if supported by substantial evidence, shall be conclusive." 16 U.S.C. § 825*l* (b) (1982). The courts must "examine the

---

6. Supplement to Motion to Reject of the Cities of Carlisle and Neola, Iowa (filed 14 Dec. 1981), J.A. at 76–80.

7. Letter Order (22 Dec. 1981), J.A. at 82.

8. *Iowa Power & Light Co.,* 18 F.E.R.C. ¶ 61,025 (1982).

9. *Cities of Carlisle v. FERC,* 704 F.2d 1259 (D.C. Cir.1983).

10. *Cities of Batavia v. FERC,* 672 F.2d 64 (D.C. Cir.1982); *Public Serv. Co. v. FERC,* 653 F.2d 681 (D.C.Cir.1981).

11. *Cities of Batavia v. FERC,* 672 F.2d at 91; accord *Public Serv. Co. v. FERC,* 653 F.2d 681.

manner in which the Commission has employed the methods of regulation which it has itself selected, and must decide whether each of the order's essential elements is supported by substantial evidence."[12] Agency orders will be sustained where the agency's path can be discerned.[13] In no case may the court "substitute its judgment for that of the agency."[14]

While the record in this case is not so well developed as might be desired, neither is it so lacking in specificity that the path taken by the agency cannot be discerned. The agency adequately considered each major objection raised by the Cities, and the Cities have not carried their heavy burden of showing that the agency erred in its determinations.

The Cities raised several cost-of-service issues in their supplement to the motion to reject, and in their application for rehearing. These issues included various efficiencies and savings related to the coming on-line of the Ottumwa Generating Station (OGS), and possible improvements in the company's cash flow position and capital requirements due to the Economic Recovery Tax Act of 1981.

In its Order Denying Rehearing, the Commission considered the claims raised by the Cities. It first found that while the Cities had not quantified their objections, the context in which the objections arose made it "highly unlikely" that any adjustments flowing from the Cities' objections could reduce IP & L's revenue requirements to the point that the proposed rates would be excessive. The Commission underscored this by observing that the Cities had exaggerated the "potential magnitude of any adjustments" by erroneously asserting that some upward adjustments in revenue had not been taken into account. The

Commission carefully assessed the specific claims made by the Cities:

For example, the pro forma increase in plant investment due to the addition of the Ottumwa unit was partially offset by an associated change in accumulated reserve for depreciation. IP & L used a single net adjustment to rate base rather than increasing gross plant and the reserve account separately. Another example is the offset Cities propose through revenues from off-system sales that might be made possible by the availability of an additional 560 MW of generating capacity. Although the net effect of the adjustment was a reduction in sales revenues, increases in off-system sales revenues from certain customers were reflected in the pro forma adjustment. It should be noted that the 560 MW figure is overstated because the cancelled sales included therein were made for nonconcurrent periods and for periods of short duration and are not additive. Moreover, if the pro forma purchased power adjustment were eliminated, except for appropriate recognition that IELP would probably purchase less from IP & L due to the operation of the Ottumwa unit, our analysis would still indicate that the proposed rates produce a revenue deficiency.[15]

The Commission also rejected the claim that the adjustments to account for ERTA would affect the outcome. The Commission observed that the proposed rates would yield an overall earned return of only 4.5 percent, leading to an overall earned return on equity well below the 14.2 percent figure to which the Cities would object.[16]

In neither case did the Commission support its reasoning with numerical calculations. At least in part this was be-

**12.** *Permian Basin Area Rate Cases,* 390 U.S. 747, 792, 88 S.Ct. 1344, 1373, 20 L.Ed.2d 312 (1968).

**13.** *Municipal Distribs. Group v. FPC,* 467 F.2d 741 (D.C.Cir.1972).

**14.** *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.,* 419 U.S. 281, 285, 95 S.Ct. 438, 441, 42 L.Ed.2d 447 (1974) (quoting *Citizens to*

*Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971)).

**15.** *Iowa Power & Light Co.,* 18 F.E.R.C. ¶ 61,025, at 61,035 (1982).

**16.** *Id.*

cause the Commission did not quantify some objections left unquantified by the Cities. In most cases such casual analysis would require a remand. While agency expertise deserves deference, it deserves deference only when it is exercised; no deference is due when the agency has stopped shy of carefully considering the disputed facts. In this case, however, the Commission dispensed with elaborate calculations only because the context made it absolutely clear that even the "worst case" calculations could not move the requested rate out of the zone of reasonableness. Given the validity of that judgment by the

Commission, it would be an exercise in futility to require them to amend their calculations now.

### III. CONCLUSION

The Commission's orders, while falling far short of the ideal,[17] are supported by substantial evidence. The Cities have failed to show that the Commission did not adequately consider the claims raised, or that the Commission's analysis was flawed.[18] The orders of the Commission are therefore

*Affirmed.*

---

**17.** The disposition of this case would have proceeded much more smoothly if the Commission had been less coy in its review of the Cities' claims. Without attempting to mandate procedures for the agency to follow, we note that judicial review would be much eased and agency functioning would not be significantly impaired if letter orders such as the ones at issue here identified the section of the statute under which the Commission was proceeding (it often matters whether the Commission proceeds under § 205 or § 206, and yet the Commission's order here did not state under which section it acted), the issues it was treating, and the analysis supporting its conclusions. We see no policy served when the Commission refuses to reveal how it arrived at its conclusions.

**18.** Because of our disposition on the merits, we need not reach the difficult and important issue of whether this court could have reviewed the Commission's decision not to suspend the rates. We note only that the issue is not foreclosed by precedent.

The Commission argues, of course, that the issue is foreclosed. The Commission claims that a decision to suspend is not reviewable by this court at any time; since any adjustment of rates must be preceded by a suspension, the Commission argues that its unreviewable discretion in approving or denying suspensions blocks this court from providing any relief under § 205.

At least in part, the Commission overstates its case. The unreviewability of Commission decisions not to suspend has not been mandated by the Supreme Court. The Supreme Court has made such rulings where the Interstate Commerce Commission is concerned, *Arrow Transp. Co. v. Southern Ry. Co.,* 372 U.S. 658, 83 S.Ct. 984, 10 L.Ed.2d 52 (1963), but that agency operates under a significantly different statutory scheme. The Interstate Commerce Act provides for retroactive relief for those who have paid unreasonably high rates, and so the crux of the

issue posed here—the denial of any remedy—is not raised.

Nor has the issue been explicitly decided by this court. In several cases, this court has held that decisions to suspend are unreviewable. *Village of Winnetka v. FERC,* 678 F.2d 354, 356 n. 7 (D.C.Cir.1982); *Delmarva Power & Light Co. v. FERC,* 671 F.2d 587 (D.C.Cir.1982); *Municipal Light Bds. v. FPC,* 450 F.2d 1341, 1351–52 (D.C. Cir.1971), *cert. denied,* 405 U.S. 989, 92 S.Ct. 1251, 31 L.Ed.2d 455 (1972). As the Cities note, however, decisions to suspend differ fundamentally from decisions not to suspend. When the decision to suspend a rate is made, the Commission—and thereby the court—retains the power to alter the rate retroactively. Refusing to review a decision to suspend arguably amounts only to recognizing the primary jurisdiction of the agency. Refusing to review a decision not to suspend, under the analysis urged by FERC, requires a far greater level of deference to the agency. It requires the court to find that it has no power to remedy the levying of an unreasonable rate, even where the imposition of the rate derives directly from demonstrable errors by the Commission.

But neither is it clear that this court can or should retroactively alter rates filed before the Commission. The statute involved has no provision for retroactive adjustment of unreasonable rates. This omission cannot be lightly ignored, since Congress had previously incorporated a procedure for retroactive relief in the Interstate Commerce Act. One plausible conclusion is that Congress simply proposed to provide no relief. Any injury flowing from an erroneous failure to suspend was of limited magnitude, with any suspension due to expire within five months; given the significant costs associated with remedying such errors, Congress might well have concluded that the cure would be worse than the disease.

At the same time, so to hold would leave producers with an effective remedy to address Commission error—filing a new rate—while leaving purchasers vulnerable to persistent

"pancaking" of rate requests which, if not suspended by the Commission, could leave purchasers with no rights under the Act. While such might well be the scheme adopted by Congress, it would be a curious system.

The problem could be alleviated if the Commission routinely suspended all filings, at least nominally, or even if the Commission just suspended those filings which closely follow or even precede § 206 adjustment of the prior rate. We need not now explore the power of this court to address the problem. In some prior cases, this court has entertained the possibility of the retroactive adjustment of rates when error has led to the approval of an unreasonable fee. In *Tennessee Valley Mun. Gas Ass'n v. FPC,* 470 F.2d 446 (D.C.Cir.1972), this court retroactively adjusted rates to correct legal error; in *Cities of Batavia v. FERC,* 672 F.2d 64 (D.C.Cir. 1982), the court remanded a portion of the case to FERC for consideration of whether suspension and a § 205 hearing were in order, even though the filing of a subsequent rate made a § 206 remedy unavailable. *See Indiana & Mich. Elec. Co. v. FPC,* 502 F.2d 336 (D.C.Cir.1974) (retroactive adjustment of rates through exercise of the court's equitable powers), *cert. denied,* 420 U.S. 946, 95 S.Ct. 1326, 43 L.Ed.2d 424 (1975). Those cases depended on a determination that the original Commission action had rested on error; in this case, there was no error and hence no need for a remedy.