### ACHERNAR BROADCASTING COMPANY, Appellant,

v.

### FEDERAL COMMUNICATIONS COMMISSION, Appellee,

National Radio Astronomy Observatory, Intervenor.

Nos. 91–1516, 92–1149 and 94–1429.

United States Court of Appeals, District of Columbia Circuit.

Argued March 27, 1995.

Decided Aug. 18, 1995.

---

Margot Polivy, Washington, DC, argued the cause, for appellant Achernar Broadcasting Co. Katrina Renouf, Washington, DC, was on the briefs.

Gene A. Bechtel, Washington, DC, argued the cause and filed the briefs, for appellant Lindsay Television, Inc.

Michael F. Finn, Counsel, F.C.C., Washington, DC, argued the cause, for appellee. With him on the brief were William E. Kennard, Gen. Counsel, Daniel M. Armstrong, Associate Gen. Counsel, and Clifford G. Pash, Jr., Counsel, F.C.C., Washington, DC.

Christopher J. Reynolds, Prince Frederick, MD, was on the brief, for intervenor.

Before WALD, SENTELLE, and ROGERS, Circuit Judges.

SENTELLE, Circuit Judge:

These appeals arise from a comparative hearing proceeding for a construction permit for a new commercial UHF television station in Charlottesville, Virginia. Appellants are the two remaining applicants, Lindsay Television, Inc., and Achernar Broadcasting Company. The challenged Federal Communications Commission order denied both applications because interference caused by either applicant's operation would preclude simultaneous use of the channel for radio astronomical observations at the National Radio Astronomy Observatory, an intervenor in this case. Because we find the Commission's decision arbitrary and capricious, we reverse and remand both license applications.

**BACKGROUND**

In 1952 the Federal Communications Commission ("FCC" or "Commission") established Channel 64 in its table of television assignments, 47 C.F.R. § 73.606. *See Sixth Report on Television Allocations,* Vol. 1, Part 3, Rad.Reg. (P & F) 91.601, 91.908 (1952). The National Science Foundation established the National Radio Astronomy Observatory ("NRAO"), located in Green Bank, West Virginia, in 1957. Radio astronomy telescopes are extremely sensitive to radio signals because they are designed to receive very weak cosmic signals that are transmitted from great distances. In recognition of this sensitivity, in 1958 the FCC established the 13,000 square mile area surrounding the observatory as a "Quiet Zone" to protect the operations of NRAO. In addition, the Commission adopted regulations that required substantially all non-government radio applicants to notify NRAO if they proposed to operate a facility within the Quiet Zone and afforded NRAO the chance to oppose any such application based on interference caused to its operation. The rule provides NRAO an opportunity to comment on or object to the grant of such applications and states that the "FCC will consider all aspects of the problem and take whatever action is deemed appropriate." 47 C.F.R. § 73.1030(a) (1994).

Five applicants, including Achernar Broadcasting Company and Lindsay Television, Inc., filed applications for a permit to construct a new UHF television station on Channel 64 licensed to Charlottesville, Virginia, which is located on the boundary of the Quiet Zone. These applications were designated for comparative hearing pursuant to section 309(e) of the Communications Act in November 1986. *Hearing Designation Order,* 1 F.C.C.R. 732 (1986).

Lindsay proposed a transmitting location outside the Quiet Zone and Achernar proposed a site within it. NRAO objected to the grant of Achernar's application because the signal would cause interference with NRAO's operations.[1] Following a hearing, the administrative law judge ("ALJ") denied Achernar's application and granted Lindsay's application. *Evangel Communications, Inc.,* 3 F.C.C.R. 5421 (ALJ 1988) (*Initial Decision*). The ALJ disqualified Achernar because the evidence indicated that a grant of Achernar's application would result in objectionable interference to NRAO's radio astronomy activi-

---

1. The NRAO did not initially object to Lindsay's   application.

ties. *Id.* at 5431. The ALJ determined that, in any event, Lindsay was comparatively superior to Achernar and would prevail even if Achernar were not disqualified because of interference to NRAO. *Id.* at 5433.

On appeal, the FCC's Review Board decided that interference caused by Lindsay from transmitting facilities located outside the Quiet Zone should be considered. It remanded the matter to the ALJ to determine whether the interference caused by either Achernar or Lindsay, or both, would render the channel unusable to NRAO. *Evangel Communications, Inc.*, 4 F.C.C.R. 3629 (Rev. Bd.1989). Upon remand, the ALJ determined that both proposed stations would cause interference. *Achernar Broadcasting Co.*, 5 F.C.C.R. 962 (ALJ 1990) (*Supplemental Initial Decision*). The ALJ considered a recommendation by the Commission's Mass Media Bureau that the grant of an application be conditioned to restrict the licensee to go off the air between midnight and 6:00 a.m. after receipt of 30 days advance notice from NRAO of an intention to use the frequency range of Channel 64. Achernar agreed to accept a conditioned grant; Lindsay refused. Because the ALJ agreed with the NRAO that the proposed restriction was inadequate, he issued a supplemental initial decision denying both applications. *Id.* at 969.

Achernar, Lindsay and the Commission's Mass Media Bureau appealed the ALJ's supplemental initial decision to the agency's Review Board. Not persuaded that the interference would be objectionably harmful to the Observatory, the Board concluded that NRAO's actual need and use of the Channel 64 spectrum was "modest." *Achernar Broadcasting Co.*, 5 F.C.C.R. 6309, 6310–11 (Rev.Bd.1990) (*Decision*). In addition, the Board acknowledged a problem with the default grant of the license to Lindsay because its proposed station, although outside the zone, would interfere with NRAO's activities to essentially the same extent as Achernar's

site. Accordingly, it did not disqualify either applicant under the interference issue and instead ruled that the public interest would best be served by deciding the case under the standard comparative issue. *Id.* at 6311. In light of comparative considerations, the Board awarded the permit to Lindsay.[2] *Id.* at 6313. It declined to attach restrictions to the grant and stated that any such condition should be imposed by the Commission.

Upon review, the FCC reversed the Board and concluded that the public interest would be served best by denying both applications because interference caused by either applicant's operation would preclude simultaneous use of the channel for astronomical observations at NRAO. *See Achernar Broadcasting Co.*, 6 F.C.C.R. 5393 (1991) (*Memorandum Opinion*). It also denied Lindsay's petition for reconsideration. *Achernar Broadcasting Co.*, 7 F.C.C.R. 1778 (1992).

The Commission based its conclusion that protecting NRAO from interference is a "goal of higher priority" than that of service considerations largely on its 1958 order stating, "it serves the public interest to afford the 'maximum practicable protection' against interference with radio astronomy at Green Bank from new broadcast transmitters within the defined geographical area known as the Quiet Zone." *Memorandum Opinion*, 6 F.C.C.R. at 5393–94 (citing *Report and Order: Protection of Radio Astronomy Frequencies*, FCC 58–1111, 17 Rad.Reg. (P & R) 1738, 1739 (1958)). The Commission agreed with the ALJ that no weight should be given to Achernar's provision of new service to underserved areas because it was the very existence of the Quiet Zone that created such underserved areas. *Memorandum Opinion*, 6 F.C.C.R. at 5394. As for Lindsay, the Commission noted that the record suggested that its proposed operation would also interfere substantially with NRAO activities. The Commission concluded that it would not serve the public interest to grant the applica-

2. The Board refused to give weight to Achernar's proposed service to "gray-area" coverage, *i.e.*, areas served by only one other television station. It ultimately held that Lindsay deserved to prevail because its integration enhancements outweighed Achernar's. In particular, it found that the local residence and civic participation of

Lindsay's owners outweighed the female participation of Achernar's integrated owner. 5 F.C.C.R. at 6313. The parties do not argue the effect of our disapproval of the Commission's integration policy in *Bechtel v. FCC*, 10 F.3d 875 (D.C.Cir.1993), and we express no opinion thereon.

tion. In addition, the Commission rejected the notion of granting an application subject to a sharing condition or restriction. Both Lindsay and Achernar appeal the Commission's decision.

Lindsay also appeals from a denial of its informal objections to the license renewal applications of 47 television stations in Virginia, West Virginia, Maryland, and the District of Columbia on the ground that if Lindsay's interference to NRAO were to be considered for a transmission site outside the Quiet Zone, the interference of other television stations outside the zone should also be considered. *See License Renewal Applications of Certain Broadcast Stations Licensed to Communities in Maryland, Virginia, West Virginia, and the District of Columbia,* 9 F.C.C.R. 2143 (1994).

## DISCUSSION

■ We review these FCC orders under the deferential standard mandated by section 706 of the Administrative Procedure Act, which provides that a court must uphold the Commission's decision unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In the case of an adjudicatory proceeding, such as a comparative license proceeding, we must determine whether the agency has articulated a rational connection between the facts found and the choice made; "[w]e may reverse only if the agency's decision is not supported by substantial evidence, or the agency has made a clear error in judgment." *Kisser v. Cisneros,* 14 F.3d 615, 619 (D.C.Cir.1994). The FCC's discretion is particularly great when the issues involve technical matters and questions about priorities in usage of the radio spectrum. *See Loyola Univ. v. FCC,* 670 F.2d 1222, 1226 (D.C.Cir.1982). But the Commission's decision "must be upheld, if at all, on the basis articulated by the agency itself." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 50, 103 S.Ct. 2856, 2870, 77 L.Ed.2d 443 (1983) (citations omitted).

### A. *Achernar's Application*

■ Achernar argues that the Commission's conclusion that the public interest would be served best by the denial of its application was arbitrary and capricious. Achernar's primary contention is that the Commission failed to "consider all aspects of the problem," as required by rule 73.1030(a). Achernar asserts that the Commission's denial of its application was unreasonable because such denial prevented needed television service to Charlottesville and the zone without any benefit to NRAO's activities. According to Achernar, the Commission never undertook the necessary balancing process because its consideration of the issue ended when it discovered that the proposed station would cause interference and preclude simultaneous broadcast and astronomical use of the channel under NRAO's standards. Because the FCC failed to exercise its discretion by considering the entire record, Achernar maintains that its decision is not due deference. *See Cities of Carlisle and Neola v. FERC,* 741 F.2d 429, 433 (D.C.Cir.1984).

Achernar maintains that the Commission's rigid protection of the zone defeats the rule's stated intent to provide a means of protecting NRAO's observations without impeding the development of broadcast services to the Quiet Zone since the denial of a license that would not damage NRAO directly impedes such development. Provision of a second service and transmission outlet is listed as a priority under the FCC's service objectives. Achernar challenges the Commission's refusal to credit the applicant's provision of a second service to much of the Quiet Zone. The Commission has not simply refused to give weight to this factor, but has actively held against Achernar the public interest benefits its service would provide. *Memorandum Opinion,* 6 F.C.C.R. at 5394. The Commission's *Sixth Report on Television Allocations,* Vol. 1, Part 3, Rad.Reg. (P & F) 91.601, 91.620 (1952), which carried out the mandate of 47 U.S.C. §§ 151 and 307(b), established five priorities for channel allocation: (1) a first service to all parts of the country; (2) a local station in each community; (3) a choice of two services to all parts of the country; (4) two stations in each community; and (5) additional stations based on population, location and number of services available. The existing channel in Char-

lottesville satisfies the first two priorities. Achernar asserts that its proposed station would serve the remainder.

Achernar contends that the FCC's decision prevents Charlottesville from getting its second outlet, leaving a service dearth that is otherwise found only in sparsely populated areas of Montana or Wyoming. While the adoption of the Quiet Zone policy clearly created special considerations affecting the allocation of Channel 64, Achernar asserts that the policy was intended as a qualification on, and not a rejection of, Quiet Zone service. The Commission has not, as it has done in other instances, dedicated Channel 64 exclusively to radio astronomy, nor has it designated the channel a "secondary radio astronomy" frequency. *See Report and Order: Channel 37 Reserved for Radio Astronomy,* FCC 63–901, 1 Rad.Reg.2d (P & F) 1501, 1509 (1963). Moreover, the Commission has not deleted Channel 64 despite the existence of the observatory and the creation of the Quiet Zone.

Noting that appropriate administrative control is the essence of the FCC's regulatory mandate, *FCC v. Pottsville Broadcasting Co.,* 309 U.S. 134, 138, 60 S.Ct. 437, 439, 84 L.Ed. 656 (1940), Achernar contends that the Commission failed to exercise such control in this case because it improperly delegated its responsibility to NRAO, a private entity with a potential conflict of interest. *See Sierra Club v. Sigler,* 695 F.2d 957, 962 n. 3 (5th Cir.1983). Achernar asserts that the FCC gave dispositive weight to NRAO's administrative convenience rather than its actual scientific needs and ignored its own rulemaking determination to preserve both radio astronomy and broadcasting. This is evidenced by the FCC's failure to credit Achernar's proposed service to underserved areas and the Commission's assertion that this underservice is simply "the natural result of the Commission's administration of [the Quiet Zone] policy over the years...." *Memorandium Opinion,* 6 F.C.C.R. at 5394.

Finally, Achernar argues that direct use of Channel 64 by NRAO does not have to be precluded if the Commission were to grant Achernar's application subject to a shared-use condition. The record established that Channel 64 is virtually unused by the NRAO, whose activities could feasibly be protected by a shared-use condition. In an attempt to accommodate the NRAO, Achernar offered to make the channel available to NRAO from midnight to 6:00 a.m. upon 30 days notice. Achernar claims that the FCC based its rejection of a sharing agreement on specific terms of the proposed agreement rather than considering the concept and allowing Achernar to remedy any specific objections by creating a different agreement.

The FCC responds that there is substantial evidence in support of its decision that the grant of either application would preclude use by NRAO of a portion of the spectrum that is especially important to radio astronomy. Although Achernar points out that NRAO could have adjusted for this interference as it does for interference from other sources, the FCC avers that this does not mean that it was unreasonable to conclude that it was not in the public interest to compel NRAO to make such an accommodation. Moreover, the Commission contends that the service dearth to which Achernar's operation would respond is the "natural result" of the Quiet Zone policy and that its application is accordingly not entitled to consideration on that basis. *Memorandum Opinion,* 6 F.C.C.R. at 5394. As for the feasibility of sharing, the Commission maintains that it offered a full explanation for its rejection of this proposal based on the restrictions such an arrangement would place on NRAO's use of Channel 64, the concomitant constraints on research, and the inconvenience in negotiating for varying proposals. *See id.* at 5395–96.

The Quiet Zone rule, 47 C.F.R. § 73.1030(a), was designed to permit resolution of potential problems of interference to NRAO without impeding the development of broadcast services. *Report and Order: Protection of Radio Astronomy Frequencies,* FCC 58–1111, 17 Rad.Reg. (P & F) 1738, 1741 (1958). Under the rule, the FCC is to "consider all aspects of the problem and take whatever action is deemed appropriate." 47 C.F.R. § 73.1030(a). Failure to weigh the entire record would constitute reversible error even absent the rule's specific directive:

"While agency expertise deserves deference, it deserves deference only when it is exercised; no deference is due when the agency has stopped shy of carefully considering the disputed facts." *Cities of Carlisle and Neola,* 741 F.2d at 433. The Commission's failure to follow the clear dictate of its own rule to "consider all aspects of the problem," 47 C.F.R. § 73.1030(a), violates the rudimentary principle that agencies are bound to adhere to their own rules and procedures. *Teleprompter Cable Comm. Corp. v. FCC,* 565 F.2d 736, 742 (D.C.Cir.1977). Moreover, "[t]he Commission's notion of the public interest cannot justify its failure to abide by its own rules and to act in a manner consistent with its own precedents." *Id.*

While we normally owe deference to the FCC's determination of public policy, Achernar makes a strong argument that there is a difference between deciding that a broadcast license would interfere with NRAO's use of Channel 64 and deciding that use of Channel 64 would interfere with NRAO's activities overall and that NRAO's convenience always takes precedence over increased service to the public. The Commission's denial was not based on consideration of all aspects of the problem. It has been treating the rule as requiring a choice between astronomy and broadcasting from the outset. This choice is not compelled by rule 73.1030(a) nor any other policy. Unlike many FCC rules, section 73.1030 neither prescribes nor proscribes; it simply calls upon Quiet Zone applicants to notify NRAO of their proposals. If NRAO anticipates an interference problem which cannot be solved informally, the rule indicates that the Commission should resolve the problem by considering all aspects of it. 47 C.F.R. § 73.1030(a).

The purpose of the Quiet Zone was not to deny service. On the contrary, in the *Report and Order* adopting the Quiet Zone rule, the Commission stated that its intent was to provide protection for NRAO's observations without sacrificing needed broadcast services in the zone. Although the Commission aimed "to provide maximum protection necessary" to NRAO, it also recognized "the need for broadcast services within the proposed restricted zone and does not believe that the proposed procedure for applicants within the zone will hamper such services." *Protection of Radio Astronomy Frequencies,* 17 Rad.Reg. (P & F) at 1741. Moreover, the FCC specifically "pointed out that the rules being adopted, while for the purpose of establishing a system by which radio astronomy observations near Green Bank may be protected, are *not intended to impede the development of radio services." Id.* (emphasis added). It cautioned that "[a]ppropriate consideration of radio astronomy problems and of radio service problems will be necessary on the part of all parties concerned to the end that neither activity will be adversely affected." *Id.*

The Commission's failure to examine shared use of the channel as a viable option was unreasonable and arbitrary. Although the FCC does not have to consider every alternative, its cursory rejection "of an option that appears to serve precisely the agency's purported goals suggests a lapse of rational decisionmaking." *Office of Communication of the United Church of Christ v. FCC,* 779 F.2d 702, 714 (D.C.Cir.1985). The sharing option should have been examined in a reasoned decisionmaking process.

Moreover, the Commission's failure to address Achernar's arguments regarding its blind acceptance of NRAO's objections is troubling. If the Commission examined NRAO's standards and found them acceptable in light of other valid goals of reaching underserved areas, it should articulate its findings and the underlying rationale. In failing to engage in reasoned decisionmaking, the Commission ignored the dictate of the Report and Order setting up the Quiet Zone, which expressly states "that the Commission is not required automatically to accede to such objections as NRAO may make but will be guided by the public interest aspects of each application." *Protection of Radio Astronomy Frequencies,* 17 Rad.Reg. (P & F) at 1741. It seems that in the allocation of stations within—or in the case of Lindsay, near—the Quiet Zone the Commission has abdicated in favor of NRAO. This it cannot do.

## B. *Lindsay's Application*

■ As with Achernar, the Commission failed to weigh competing public interest considerations in its denial of Lindsay's application. We therefore find the Commission's action with regard to Lindsay was also arbitrary and capricious, particularly given the fact that Lindsay proposed a site outside the zone.

In order to minimize harmful interference to the NRAO, the FCC imposed an extra requirement upon applicants wishing to place transmitters inside the Quiet Zone: notification to NRAO. Lindsay contends that the FCC improperly adopted a new policy by considering interference to NRAO's activities in license applications for a site outside the Quiet Zone and that because its proposed site lies outside of the zone, its application should not be denied on the basis of interference. Lindsay argues the ·Commission did not balance competing public interest considerations. The FCC refused to give weight to the provision of second service, noting only that if "the benefit of the new service that Achernar would provide does not outweigh its potential adverse effect on the NRAO, then it is hardly to be found that Lindsay . . . would provide an offsetting benefit of ·overriding importance" because it would cause almost as much interference but far less service. *Memorandum Opinion,* 6 F.C.C.R. at 5396 n. 3.

The FCC responds that nothing in the Quiet Zone notification rule prohibits any party, including NRAO, from exercising its rights under ˙the ·Communications Act ˙and Commission rules to object on public interest grounds to broadcast applications for stations outside the zone. While this may be true, the Commission has given NRAO's objections the same dispositive weight as it did with Achernar's application without any explanation. Although Lindsay's proposed station is actually closer to NRAO than Achernar's station, *see id.* at 5395, the FCC failed to offer any reasoned explanation of its decision to use the same standard and rationale—protection of NRAO's operations—for sites located both inside and outside the zone.

In adopting the Quiet Zone, the FCC intentionally took itself out of evaluating relative interference levels and instead literally drew a bright line with which to protect NRAO. It knew interference could and would originate outside the zone, but struck a balance in drawing the line. To ignore that bright line without articulating how public interest considerations may differ on the two sides of the line is arbitrary and capricious. The Commission must articulate to what if any extent the Quiet Zone rule protects NRAO's activities from interference caused by stations located outside the zone if it is validly to deny an application on that basis. Furthermore, it must explain why its reasoning is consistent with the Quiet Zone rule and FCC allocations policies. · It has not explained why protecting NRAO's activities is a goal of higher priority when considering applications for stations outside the zone, nor why that goal is sufficiently high to offset the goal of providing second service. The Commission needs to articulate clearly to what extent interference to NRAO is relevant to applications outside the zone.

■ As noted earlier, Lindsay filed informal˙ objections to the license renewals of 47 stations. While the FCC is correct in stating that Lindsay lacks standing because it cannot demonstrate that it suffered any harm by the FCC's grant of the renewals, *see Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 471–72, 102 S.Ct. 752, 757–59, 70 L.Ed.2d 700 (1982), Lindsay's allegations support its point that the FCC has adopted a new policy with respect to Lindsay's application. The Commission's rejection of Lindsay's application ˙ based on interference grounds is a change in previous practice. *See Greater Boston Television Corp. v. FCC,* 444 F.2d 841, 851 (D.C.Cir.1970), *cert. denied,* 403 U.S. 923, 91 S.Ct. 2229, 2233, 29 L.Ed.2d 701. (1971) (agency may not divert from prior policy without reasoned analysis). In denying Lindsay's application, the Commission is treating stations inside and outside of the zone equally with regard to the interference issue, and in the process ignoring the zone's boundary. The Commission has not explained this extension of the zone in a reasonable way. The Commission must more fully articulate and explain its new

policy if it has truly adopted a new Quiet Zone policy for general application. *Id.; Telecommunications Research & Action Ctr. v. FCC,* 800 F.2d 1181, 1184 (D.C.Cir.1986) ("When an agency undertakes to change or depart from existing policies, it must set forth and articulate a reasoned explanation for its departure from prior norms.").

■ Finally, both Achernar and Lindsay contend that the Commission's action amounts to a de facto deletion of Channel 64. They assert that if no station in Charlottesville could satisfy NRAO's noise limits, the Commission's adoption of NRAO standards for approval of any licensee effectively amends the table of assignments without the necessary rulemaking. 47 C.F.R. §§ 1.401(d), 1.420; *see also Communications Inv. Corp. v. FCC,* 641 F.2d 954, 967–68 (D.C.Cir.1981) (table of assignments can be modified by proper rulemaking procedures). The parties argue that the FCC's assertion that no one had demonstrated that Channel 64 could not be used to serve Charlottesville with less interference to NRAO is unavailing because the record shows that television stations as far away as Pennsylvania and Florida cause interference at NRAO, and there is no reason to believe that any use of the channel would not violate NRAO's standards.

The Commission's weak response—that it authorized a new educational station within the zone that has extremely lower power, Channel 51 in Staunton, Virginia—speaks for itself. The adoption of NRAO standards appears to foreclose the use of Channel 64 for Charlottesville by any station whether inside or outside the zone. Such foreclosure effectively amends the table of assignments by deleting that channel. While the Commission is free on the basis of an appropriate rulemaking record either to change the terms of the Quiet Zone rule or to delete Channel 64, it may not do either in the context of this licensing proceeding. Although the Commission suggests that these denials do not necessarily rule out the use of Channel 64 in the future in a way that would not interfere with NRAO, it does not make this clear. The FCC's decision intimates that any use of the channel would cause some

interference and that any interference to NRAO is unacceptable.

## CONCLUSION

The Commission's reasoning for the denial of Achernar's and Lindsay's applications was less than clear. It is especially questionable whether the Commission's action was consistent with the proof under the designated issue and the intent of the Quiet Zone rule. The Commission did not, as it asserts, balance competing public interest considerations; rather it blindly acceded to the observatory's objections and ignored the rule's purpose of accommodation by declaring protection of NRAO's activities from interference to be the highest priority regardless of the location of the applicant. Moreover, it acted arbitrarily in refusing to make its own judgments and ignoring its own allocations priorities. Accordingly, we remand both license applications to the Commission for an adequate inquiry and explanation of what test of the public interest it is using in the case of astronomy channel use. Lastly, due to lack of standing, Lindsay's separate petition for review of the Commission's denial of its informal objections is denied.