883 F.2d 117
 280 U.S.App.D.C. 45, 105 P.U.R.4th 528
 MICHIGAN CONSOLIDATED GAS COMPANY, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
National Steel Corporation, Citizens Gas & Coke Utility,
Panhandle Eastern Pipe Line Company, American Cyanamid
Company, A.P. Green Refractories Company, Amoco Production
Company, Michigan Gas Utilities Company, Central Illinois
Light Company, Carnation Company, Association of Businesses
Advocating Tariff Equity, Intervenors.
STATE OF MICHIGAN and Michigan Public Service Commission, Petitioners,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
National Steel Corporation, Citizens Gas & Coke Utility,
Panhandle Eastern Pipe Line Company, Michigan Consolidated
Gas Company, Amoco Production Company, Michigan Gas
Utilities Company, Central Illinois Light Company, Intervenors.
MICHIGAN CONSOLIDATED GAS COMPANY, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Citizens Gas & Coke Utility, Panhandle Eastern Pipe Line
Company, National Steel Corporation, Michigan Gas
Utilities Company, A.P. Green
Refractories Company, Intervenors.
 Nos. 88-1062, 88-1199 and 88-1362.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued May 19, 1989.
Decided Aug. 18, 1989.
 
 Jeffrey M. Petrash with whom James H. Holt, Washington, D.C., was on the brief, for petitioner, Michigan Consol. Gas Co. in No. 88-1062 and No. 88-1362 and intervenor in No. 88-1199.
 Henry J. Boynton, Asst. Atty. Gen., with whom Frank J. Kelley, Atty. Gen., Louis J. Caruso, Sol. Gen., and Don L. Keskey, Asst. Atty. Gen., Lansing, Mich., State of Mich., were on the brief, for petitioners, State of Mich. and Michigan Public Service Com'n in No. 88-1199.
 Dwight C. Alpern, Atty., F.E.R.C. with whom Catherine C. Cook, Gen. Counsel, and Jerome M. Feit, Sol., F.E.R.C., Washington, D.C., were on the brief, for respondent in Nos. 88-1062, 88-1199 and 88-1362. John Estes, Washington, D.C., also entered an appearance, for respondent F.E.R.C.
 William H. Penniman with whom Raymond N. Shibley and Bruce W. Neely, Washington, D.C., were on the joint brief, for intervenors, Panhandle Eastern Pipe Line Co. and Nat. Steel Corp. in Nos. 88-1062, 88-1199 and 88-1362. Brian D. O'Neill, Washington, D.C., also entered an appearance, for intervenor, Panhandle Eastern Pipe Line Co. Douglas H. West, Detroit, Mich., also entered an appearance, for intervenor, Nat. Steel Corp.
 Steven M. Sherman and William P. Diener, Indianapolis, Ind., entered appearances, for intervenor, Citizens Gas & Coke Utility in Nos. 88-1062, 88-1199 and 88-1362.
 Nicholas W. Fels, Washington, D.C., entered an appearance, for intervenor American Cyanamid Co. in No. 88-1062.
 Lyndon C. Taylor and Paula M. Young, Washington, D.C., entered appearances, for intervenor A.P. Green Refractories Co. in Nos. 88-1062 and 88-1362.
 Kevin M. Sweeney, Washington, D.C., entered an appearance, for intervenor, Amoco Production Co. in Nos. 88-1062 and 88-1199.
 John R. Schaefgen, Jr., Washington, D.C., entered an appearance, for intervenors, Michigan Gas Utilities Co. and Cent. Illinois Light Co. in Nos. 88-1062, 88-1199 and 88-1362.
 Richard A. Oliver, Washington, D.C., entered an appearance, for intervenor, Carnation Co. in No. 88-1062.
 Glen S. Howard, Washington, D.C., entered an appearance, for intervenor, Ass'n of Businesses Advocating Tariff Equity in No. 88-1062.
 Frederick Moring and Herbert J. Martin, Washington, D.C., were on the brief, for amicus curiae Associated Gas Distributors in Nos. 88-1062, 88-1199 and 88-1362, urging review. M. Lisanne Crowley, Washington, D.C., also entered an appearance, for amicus curiae Associated Gas Distributors in No. 88-1062.
 Before RUTH B. GINSBURG, D.H. GINSBURG, and SENTELLE, Circuit Judges.
 Opinion for the Court filed by Circuit Judge SENTELLE.
 SENTELLE, Circuit Judge:
 
 
 1
 In the orders we review, the Federal Energy Regulatory Commission ("FERC" or "the Commission") permitted Panhandle Eastern Pipe Line Company ("Panhandle") to transport natural gas from Oklahoma directly to National Steel Corporation's ("National") Great Lakes Steel Division plant in Michigan, bypassing the local distribution network of Michigan Consolidated Gas Company ("MichCon"). MichCon, together with the State of Michigan and the Michigan Public Service Commission (collectively "MPSC"), petition for review, arguing that FERC exceeded its jurisdiction and incorrectly construed section 7(c) of the Natural Gas Act, 15 U.S.C. Sec. 717f(c) (1982) ("NGA" or "the Act"). Finding no error, we deny the petition and uphold the orders.
 
 I. BACKGROUND
 
 2
 At its Great Lakes Steel Division plant in Michigan, National has for many years been an end-user customer of MichCon, a local distribution company ("LDC"). Prior to March 24, 1985, National had purchased all its natural gas requirements from Michigan. On that date, MichCon commenced transportation on its system and National, while continuing to deal with the LDC, transported 100% of its gas, purchased from third parties, on the MichCon system. As a Michigan intrastate LDC, MichCon provided transportation at rates set by MPSC.
 
 
 3
 As it happens, an interstate pipeline owned by Panhandle transverses National's Michigan property. National and Panhandle negotiated an arrangement by which Panhandle would add fittings and pipes to tap its line at the National location, thereby making it possible for Panhandle to transport directly to National gas purchased by National in Oklahoma. The arrangement permitted National to bypass the MichCon local network and to transport its gas at interstate rates, lower than those set by MPSC for gas transported on MichCon's system. The new connection would cost Panhandle approximately $188,000, which National agreed to reimburse.
 
 
 4
 As an interstate transporter of natural gas, Panhandle applied for a certificate of public convenience and necessity from FERC under section 7(c) of the Natural Gas Act, 15 U.S.C. Sec. 717f(c), to tap the line and provide interruptible transportation service to National. See Abbreviated Application for Certificate of Public Convenience and Necessity, In the Matter of Panhandle Eastern Pipe Line Co., FERC Docket No. CP86-232 (Dec. 12, 1985), Joint Appendix ("J.A.") at 59a-60a. FERC consolidated this application with other related proceedings and, inter alia, directed an administrative law judge ("ALJ") to resolve several disputed issues of material fact. See Order Consolidating Applications and Complaint and Prescribing Hearing, FERC Docket Nos. CP86-232, -486, -504, -551, -573, -598, -584, -663 (Sept. 16, 1986) at 13, J.A. at 137a, 148a. FERC ordered the ALJ to "expedite[ ] [the] evidentiary hearing" and render a decision within ninety days due to "new economic pressures [for pipeline companies] to adapt, and to adapt quickly, to changing market conditions."[1] Id. at 12-13, 16, J.A. at 148a-49a, 152a.
 
 
 5
 The ALJ found that Panhandle's proposed transportation service would serve the public convenience and necessity. Panhandle Eastern Pipe Line Co., 38 F.E.R.C. p 63,009 at 65,046 (1987). While FERC policy favors service to industrial customers through LDCs such as MichCon rather than through pipelines, the ALJ noted that the preference "is conditional and does not apply if economic considerations preclude it." Id. at 65,040. In the present case, the ALJ concluded that economic conditions in fact precluded the preference. The ALJ then undertook an extensive analysis of the particular considerations relevant to the Panhandle application, including factors cited by Panhandle and National Steel in favor and those cited by MichCon and MPSC against. He then concluded that, on balance, the proposed service was in the public convenience and necessity. Id. at 65,042-44.
 
 
 6
 On appeal, the Commission (with one dissent) adopted the ALJ's findings and conclusions and granted Panhandle's request for a certificate of public convenience and necessity. Opinion No. 275-A; Opinion and Order Affirming in Part, Reversing in Part, and Modifying Initial Decision, Panhandle Eastern Pipe Line Co., 40 F.E.R.C. p 61,220 (1987) (reversing and modifying only as to matters not material to the present petition for review). FERC reiterated the ALJ's analysis of the limited nature of the preference for LDC service to industrial end-users, stating that "we have made clear that we would not rigidly follow that rule, but rather [would] examine the individual circumstances of each [case] before applying the policy." Id. at 61,751.
 
 
 7
 On January 27, 1988, the Commission denied rehearing, rejecting MPSC's claim of exclusive jurisdiction to authorize the bypass. The Commission held that Panhandle's proposed service constituted transportation in interstate commerce, not local distribution. Opinion No. 275-B; Opinion and Order Partially Granting and Denying Rehearing, Panhandle Eastern Pipe Line Co., 42 F.E.R.C. p 61,076, at 61,348-49 (1988). On March 28, 1988, the Commission rejected MichCon's request for rehearing of Opinion No. 275-B. Order Dismissing Request for Rehearing, Panhandle Eastern Pipe Line Co., 42 F.E.R.C. p 61,381, at 62,129 (1988). MichCon and the Michigan state parties all petitioned this Court for review,[2] claiming that the Commission overstepped its jurisdiction by authorizing the bypass, departed from its longstanding policy without a reasoned explanation, reached conclusions supporting its grant of the certificate without substantial evidence, and denied petitioners due process of law. For the reasons set out below, we find that none of these assertions merits granting the petition for review.
 
 II. ANALYSIS
 
 8
 Our review of the Commission's action is subject to section 706(2)(A) of the Administrative Procedure Act, 5 U.S.C. Sec. 706(2)(A) (1982). East Tennessee Natural Gas Co. v. FERC, 863 F.2d 932, 937 (D.C.Cir.1988); Maryland People's Counsel v. FERC, 761 F.2d 768, 774 (D.C.Cir.1985). We must uphold the Commission's decision unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. Sec. 706(2)(A).
 
 
 9
 Under the familiar arbitrary and capricious standard, our "scope of review ... is narrow and [we should] not ... substitute [our] judgment for that of the agency," but rather should determine " 'whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.' " Motor Vehicle Mfrs. Ass'n, Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983) (quoting Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 285, 95 S.Ct. 438, 441-42, 42 L.Ed.2d 447 (1974); other citation omitted). See also Marsh v. Oregon Natural Resources Council, --- U.S. ----, 109 S.Ct. 1851, 1860, 104 L.Ed.2d 377 (1989); Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971); Maryland People's Counsel, 761 F.2d at 774. As part of this task we must determine whether "the agency ... articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.' " Motor Vehicles Mfrs. Ass'n, 463 U.S. at 29, 103 S.Ct. at 2859 (quoting Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168, 83 S.Ct. 239, 246, 9 L.Ed.2d 207 (1962)). With these standards in mind, we proceed to analyze each of the issues raised by petitioners.
 
 A. Commission Jurisdiction
 
 10
 Petitioners argue that FERC overstepped its statutory jurisdiction under section 1(b) of the NGA, 15 U.S.C. Sec. 717(b), which states that the Act does "not apply ... to the local distribution of natural gas." Petitioners contend that FERC violated the dual state-federal regulatory scheme over natural gas by interfering in a question of local distribution of gas involving "essentially local concerns." Joint Opening Brief of Petitioners State of Michigan and Michigan Pub. Serv. Comm'n at 8. FERC held in Opinion 275-B that it has exclusive jurisdiction over this bypass arrangement, stating that states are "free to regulate the rates and review the purchasing practices of [local] distributors under their jurisdiction" but could not "frustrate individual [interstate] pipeline transactions" like this arrangement, "irrespective of local effects." Opinion No. 275-B, 42 F.E.R.C. at 61,349. Without determining the precise boundaries of FERC and state regulatory jurisdiction, we have no difficulty in holding that FERC has jurisdiction over the particular arrangement involved in the present controversy.
 
 
 11
 The arrangement in dispute involves merely interstate transportation of natural gas, a subject matter clearly within the Commission's jurisdiction. Congress defined the federal regulatory jurisdiction over natural gas in 15 U.S.C. Sec. 717(b) as including "the transportation of natural gas in interstate commerce." Id. On the other hand, the jurisdiction "shall not apply to any other transportation or sale of natural gas or to local distribution of natural gas." Id. The present arrangement is the subject of federal regulation pursuant to the NGA because the arrangement involves the transportation of natural gas in interstate commerce, not a local sale. It is undisputed that title to the gas passes in Oklahoma, not Michigan. Panhandle, the transporter of the gas, is not a party to the sale. Panhandle's role under the arrangement is simply to transport National's gas from one state to another across several intervening states. It is hardly conceivable that a transaction could fit more neatly into the category of "transportation of natural gas in interstate commerce."
 
 
 12
 Petitioners call our attention to Arkansas Electric Cooperative Corp. v. Arkansas Public Service Commission, 461 U.S. 375, 103 S.Ct. 1905, 76 L.Ed.2d 1 (1983), in support of their plea for a contrary result. While we commend this case to the interested reader for its thorough discussion of the history of the delineation between federal and state regulation of energy transactions, id. at 377-80, 103 S.Ct. at 1908-10, we do not find it to compel the result petitioners seek. In Arkansas Electric, the Supreme Court determined only that a state assertion of regulatory jurisdiction over the wholesale rates charged by an electric cooperative to its member retail distributors within the same state was not preempted by the enabling statutes of FERC. Id. at 384-89, 103 S.Ct. at 1912-15. In no sense did the Court establish any sort of inverse preemption, allocating to states a power to exclude gas transactions involving industrial end-users where the transaction involved is interstate transportation. On that subject, the law would appear to be the same after Arkansas Electric as before. That is, Congress meant to make the Commission "jurisdiction plenary and extend[ ] it to all wholesale sales in interstate commerce except those which Congress has made explicitly subject to regulation by the states." FPC v. Southern California Edison Co., 376 U.S. 205, 215-16, 84 S.Ct. 644, 651-52, 11 L.Ed.2d 638 (1964). While the sale in the present case is retail rather than wholesale, the sale of gas in Oklahoma is not the subject matter of the transportation arrangement between Panhandle and National approved by the Commission. Transportation in interstate commerce is clearly a subject for federal regulation under 15 U.S.C. Sec. 717(b). To what extent this works a preemption of state regulation is not the subject of the present petition for review, and we need not discuss it.[3]
 
 B. Reasoned Explanation of Bypass Question
 
 13
 Petitioners contend that FERC departed from a long-standing policy favoring local distribution over interstate bypass without a reasoned explanation. We hold that the Commission did provide a reasoned explanation for its departure and, furthermore, clarified that the alleged "policy" is, in fact, merely a surmountable "preference."
 
 
 14
 It is well established that an agency may not " 'casually ignore its own past decisions' " and that " '[d]ivergence from agency precedent demands an explanation.' " Cross-Sound Ferry Servs., Inc. v. ICC, 873 F.2d 395, 398 (D.C.Cir.1989) (citations omitted). While " '[a]n agency changing its course must supply a reasoned analysis indicating that prior policies and standards are being deliberately changed,' " Hall v. McLaughlin, 864 F.2d 868, 872 (D.C.Cir.1989) (quoting Greater Boston Television Corp. v. FCC, 444 F.2d 841, 852 (D.C.Cir.1970), cert. denied, 403 U.S. 923, 91 S.Ct. 2229, 29 L.Ed.2d 701 (1971)), "where a particular agency action does not appear to be inconsistent with prior decisions, the agency explanation need not be elaborate," id. at 873 (citing United Mun. Distribs. Group v. FERC, 732 F.2d 202, 211 (D.C.Cir.1984) (sufficiently different circumstances from prior decisions justified deviation from precedent via "laconic" explanation); West Coast Media, Inc. v. FCC, 695 F.2d 617, 621 (D.C.Cir.1982), cert. denied, 464 U.S. 816, 104 S.Ct. 74, 78 L.Ed.2d 87 (1983) (recitation of factual differences sufficient to deviate from prior case)).
 
 
 15
 In the instant case, FERC has more than sufficiently explained its deviation from policy, if it be that. Both the ALJ, 38 F.E.R.C. at 65,040, and the Commission, 40 F.E.R.C. at 61,751-52, noted that the policy was merely a preference rebuttable on a case-by-case basis. See Panhandle Eastern Pipe Line Co., 29 F.E.R.C. p 61,338 at 61,709 (1984); Missouri Edison Co., 47 F.P.C. 849, 851, reh'g denied, 47 F.P.C. 1112 (1972), rev'd on other grounds, 479 F.2d 1185 (D.C.Cir.1973); Southern Natural Gas Co., 25 F.P.C. 925, 927, reh'g denied, 25 F.P.C. 1231 (1961). The ALJ proceeded to analyze the economic conditions of all parties involved in the bypass. See 38 F.E.R.C. at 65,041. After considering National's poor competitive position vis-a-vis foreign steel manufacturers, the ALJ concluded that National would reduce energy costs one way or another--but, through whatever means chosen, National would either significantly reduce or terminate its dealings with MichCon. 38 F.E.R.C. at 65,043. Thus, any harm to MichCon from the bypass would ultimately occur regardless of whether FERC issued the certificate of public convenience and necessity. Finally, weighing the inevitable--that is, National's switch to an alternative supplier or source of fuel--against the interim benefits to MichCon from continuing to supply natural gas to or transport gas for National, the ALJ found the preference favoring local distributors surmounted--especially considering that the Great Lakes facility employs 5,500 employees and National company-wide employs 12,000, all of whose jobs could be endangered by any significant termination of operation by National. 38 F.E.R.C. at 63,043. The Commission adopted the ALJ's findings.[4] 40 F.E.R.C. at 61,752.
 
 
 16
 This reasoning hardly appears to " 'swerve' from ... prior decisions." Hall, 864 F.2d at 873. Rather, it appears to present the quintessential situation in which the presumption was designed to be surmounted; insistence on LDC participation could, the Commission determined, cause significant economic harm to National and to the local economy supported by National's Great Lakes Steel Division facility. See Missouri Edison Co. v. FPC, 479 F.2d 1185, 1189 (D.C.Cir.1973) (considering in public-interest calculus the effects on the local economy, particularly the loss of 500 jobs, if an end-user of natural gas was forced out of business due to high energy costs). Accordingly, we conclude that the Commission committed no unexplained departure from prior practice.
 
 
 17
 FERC also adds that it has a long-standing policy favoring competition. The Commission contends that we cannot require FERC to enforce the rebuttable presumption favoring LDCs over the stronger policy favoring competition. Essentially, FERC argues that a competitive gas market has developed at the wellhead (producer's end of the pipeline) due to deregulation. That competitive market, however, has not been passed through to the consumer because of intervening state regulation. Until prices are reduced at the consuming end and consumers are permitted to purchase more gas, the surplus at the producing end could depress the domestic drilling industry. See Panhandle, 38 F.E.R.C. at 65,046-47 (citing Order No. 436, Regulation of Natural Gas Pipeline After Partial Wellhead Decontrol, 50 Fed.Reg. 42,408 (1985) (codified at 18 C.F.R. Parts 2, 157, 250, 284, 375 & 381 (1988)), aff'd in part and vacated and remanded in part, Associated Gas Distribs. v. FERC, 824 F.2d 981, 993 (D.C.Cir.1987), cert. denied, --- U.S. ----, 108 S.Ct. 1468, 99 L.Ed.2d 698 (1988) ("AGD")). MichCon responds that FERC's "competitive model" is based on a faulty assumption--that the natural gas market is competitive--although it has been regulated for the last fifty years.
 
 
 18
 Whether FERC's model is "faulty" or not, which we do not decide, we are not at liberty to replace FERC's economic reasoning, supported by its technical expertise, with our own. See generally Marsh v. Oregon Natural Resources Council, 109 S.Ct. at 1861 (where "analysis of the relevant [factual evidence] 'requires a high level of technical expertise,' " courts are compelled to "defer to 'the informed discretion of the responsible federal agencies; ' ") (citations omitted).
 
 
 19
 MichCon also contends that an essential link in FERC's "departure" from its preference for LDCs--National's intent to pursue and obtain an alternative supplier or alternative source of energy--is not supported by substantial evidence. MichCon states that the sole evidence in support of this conclusion is direct testimony of one of National's officials. MichCon contends that the "mere description of alternatives ... does not [make them] serious proposals." Brief for Petitioner MichCon at 40. We do not agree.
 
 
 20
 Section 19 of the NGA, 15 U.S.C. Sec. 717r(b), states that factual "finding[s] of the Commission ..., if supported by substantial evidence, shall be conclusive." We have previously stated that "this is no more than a recitation of the application of the 'arbitrary and capricious' standard to factual findings." Maryland People's Counsel, 761 F.2d at 774 (citing Association of Data Processing Serv. Orgs. v. Board of Governors of the Fed. Reserve Sys., 745 F.2d 677, 681-86 (D.C.Cir.1984)). See also Marsh, 109 S.Ct. at 1861 & n. 23 (applying arbitrary and capricious standard instead of reasonableness standard to a factual dispute); East Tennessee, 863 F.2d at 937. It is also quite clear FERC may make predictions--"[m]aking ... predictions is clearly within the Commission's expertise" and will be upheld if "rationally based on record evidence." East Tennessee, 863 F.2d at 938-39 (citing AGD, 824 F.2d at 1008). Moreover, "agencies do not need to conduct experiments in order to rely on reasonable economic propositions." AGD, 824 F.2d at 1008-09.
 
 
 21
 Thus, we must determine if the Commission's reliance on that single source was arbitrary and capricious. That evidence comes from a single source does not alone make it either invalid or insubstantial. The ALJ had record evidence that National was "serious in its intention to eliminate or reduce its reliance on MichCon." 38 F.E.R.C. at 65,043. Likewise, the ALJ had record evidence that National was "currently negotiating" and "ha[d] been seriously exploring ... since 1983" a contract to purchase Canadian natural gas, transportable by means other than MichCon facilities. Id. at 65,044.
 
 
 22
 From this evidence the ALJ drew rational conclusions adopted by the Commission that National was in a serious steel war with foreign steel makers and had to reduce production costs. The Commission credited National's attempts to secure alternative sources of fuel, even though National had not at the time actually secured such an alternative source. Furthermore, maintenance of the status quo could, in the ALJ's determination, result in the loss of several thousand jobs if National could not otherwise reduce production costs. These findings are not arbitrary but had substantial basis in the record. From these factual findings, it was reasonable for FERC to predict that National would ultimately find an alternative source, or, if it did not, could ultimately be forced out of business or forced to lay off employees. We hold that the Commission's decision is supported by substantial evidence and is neither arbitrary nor capricious.
 
 C. Fair Proceedings and Due Process
 
 23
 Finally, petitioners contend that they were denied due process of law because the expedited proceedings were limited to ninety days and because of the ALJ's denial, upheld by FERC, 40 F.E.R.C. at 61,753-54, of MichCon's request to introduce portions of discovery depositions of three National Steel officials.
 
 
 24
 We lack jurisdiction over petitioners' first claim, that the expedited proceedings denied them due process, because petitioners failed to raise it on rehearing before FERC.[5] See NGA Sec. 19(a), 15 U.S.C. Sec. 717r(a); ASARCO, Inc. v. FERC, 777 F.2d 764, 771 (D.C.Cir.1985); Papago Tribal Util. Auth. v. FERC, 628 F.2d 235, 243 (D.C.Cir.), cert. denied, 449 U.S. 1061, 101 S.Ct. 784, 66 L.Ed.2d 604 (1980).
 
 
 25
 Petitioners next argue that the ALJ erroneously relied on discovery rules not in effect to deny admission of the depositions when the rules in effect at the time of the hearing "did not include specific rules governing discovery." See Brief for MichCon at 47. FERC responds that under Commission practice parties are to file witnesses' written direct testimony and exhibits prior to the hearing, and here, in particular, the ALJ established a procedural schedule for the filing of all direct exhibits and testimony and for the hearing for cross-examination. Brief for FERC at 67 (citing Order Setting Procedural Schedule, Panhandle Eastern Pipe Line Co., F.E.R.C. Docket Nos. CP86-232 (Sept. 30, 1986), J.A. at 178a. MichCon, FERC contends, should have filed these depositions with its written testimony consistent with the ALJ's schedule on November 5, 1986. Instead, MichCon filed them on November 24 at the beginning of the evidentiary hearing. Accordingly, the ALJ denied their admission.
 
 
 26
 When a party is on reasonable notice as to the dates and times for hearings and for filings in an administrative proceeding, we are hard pressed to hold that the administering agency acted arbitrarily or capriciously in denying admission of materials untimely filed. Although not an invariable rule, "[c]ourts generally accord agencies broad discretion in fashioning hearing procedures." Lyons v. Barrett, 851 F.2d 406, 410-11 (D.C.Cir.1988) (citing Vermont Yankee Nuclear Power Corp. v. NRDC, Inc., 435 U.S. 519, 543, 98 S.Ct. 1197, 1211, 55 L.Ed.2d 460 (1978)). Cf. TRT Telecomm. Corp. v. FCC, 876 F.2d 134, 152 n. 20 (D.C.Cir.1989) ("we cannot, absent congressional instruction, impose our own notions of the 'best' procedural format"); Kansas P. & L. Co. v. FERC, 851 F.2d 1479, 1484 (D.C.Cir.1988) (FERC "has broad discretion ... to decide what procedures to use in fulfilling its statutory responsibilities") (citations omitted).
 
 
 27
 Whether or not FERC relied on a Commission rule that had not yet taken effect, we do not find its denial of admission of the depositions arbitrary or capricious. See Harter v. United States, 871 F.2d 1140, 1142 (D.C.Cir.1989) (plaintiff "faces [an] uphill challenge of demonstrating that the [agency's] determination ... is founded on an impermissible view of the [agency's] procedural discretion in admitting evidence in [the subject] proceeding") (citations omitted). The important point is that petitioners were aware of the ALJ-imposed deadlines--the times and dates that the depositions were due--and failed to comply. As we recently noted in the context of a party's failure to comply with an agency's announced pleading cycle,
 
 
 28
 [n]ot only are we mindful that rules are rules ... and that rules bind litigants before the agency as well as the agency itself, but those of us who are privileged to serve in courthouses should be the very last to fault an agency's effort to bring orderliness and predictability (and finality) to the litigation process.
 
 
 29
 Llerandi v. FCC, 863 F.2d 79, 87 (D.C.Cir.1988) (citations omitted). We cannot hold the ALJ or FERC responsible for petitioners' omission. Thus, we hold that petitioners have not demonstrated that they were not provided fair proceedings and adequate due process.
 
 III. CONCLUSION
 
 30
 For the above stated reasons, we conclude that FERC did not act arbitrarily or capriciously in granting Panhandle a certificate of convenience and necessity to transport for and deliver natural gas to National and thereby to bypass MichCon's local distribution network. We deny the petition for review and uphold the three orders.[6]
 
 
 
 [1]
 FERC amended the period to grant the ALJ an additional thirty days. Order Amending Order Consolidating Applications and Complaints, FERC Docket No. CP86-232, et al. (Sept. 26, 1986), J.A. at 177a
 
 
 [2]
 MichCon also filed suit in the United States District Court for the Western District of Michigan to enjoin Panhandle from constructing facilities and providing service to National, as authorized by the Commission, without complying with a Michigan statute, 1929 Mich.Pub. Acts 69, Mich.Comp. Laws Secs. 460.501 et seq.; Mich. Stat. Ann., et seq. The district court granted summary judgment for the defendants, concluding that the Michigan act had been preempted by the NGA and, therefore, that MPSC had no authority to require a state certificate for the Commission-approved bypass. National Steel Corp. v. Long, 689 F.Supp. 729, 738 (W.D.Mich.), appeal docketed, No. 88-1774 (6th Cir. Aug. 3, 1988). An appeal to the Sixth Circuit is pending at the time of this writing
 
 
 [3]
 We express no opinion on the finding of preemption in National Steel Corp. v. Long, 689 F.Supp. 729, a matter which is presumably before the Sixth Circuit on appeal
 We also find it unnecessary to determine whether an agency's interpretation of its jurisdiction under the statute it enforces is subject to deference under Chevron U.S.A. Inc. v. NRDC, 467 U.S. 837, 842-43, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984), because the Commission's view is sustainable whether or not we afford such deference. Compare Mississippi Power & Light Co. v. Mississippi ex rel. Moore, --- U.S. ----, 108 S.Ct. 2428, 2443, 101 L.Ed.2d 322 (1988) (Scalia, J., concurring in the judgment) (arguing Chevron deference applies to agency interpretation of its statutory jurisdiction) with id. 108 S.Ct. at 2446-47 (Brennan, J., dissenting) (arguing it does not).
 The notion that Chevron deference should be afforded an agency's interpretation of its statutory jurisdiction has been the subject of skeptical comment. See, e.g., Kokechik Fishermen's Ass'n v. Secretary of Commerce, 839 F.2d 795, 807 (D.C.Cir.1988) (Starr, J., dissenting); New York Shipping Ass'n v. Federal Maritime Comm'n, 854 F.2d 1338, 1363 n. 9 (D.C.Cir.1988).
 
 
 [4]
 FERC added that MichCon may in the long term actually be able to reduce rates, since the immediate availability of excess pipeline capacity may make it unnecessary to build additional pipelines in the future to meet growth in demand
 
 
 [5]
 See Request for Rehearing of Michigan Consolidated Gas Company, Panhandle Eastern Pipe Line Co., et al., F.E.R.C. Docket Nos. CP86-232, -486, -504, -551, -573, -598, -645, -655, -660, -670, -671 (Oct. 9, 1987) at 10, J.A. at 1071, 1080a
 
 
 [6]
 Petitioners raise additional issues which we need not address because the issues were either not raised in their application for rehearing, 15 U.S.C. Sec. 717r(a), or have been mooted by other acts of the parties